*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0349p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SEAN MICHAEL FLAIM,

                *Plaintiff-Appellant,*

    *v.*

MEDICAL COLLEGE OF OHIO, et al.,

                *Defendants-Appellees.*

No. 04-3493

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-07197—James G. Carr, Chief District Judge.

Argued: April 22, 2005

Decided and Filed: August 17, 2005

Before: MARTIN, COOK, and LAY, Circuit Judges.[*]

---

## COUNSEL

**ARGUED:** Edward L. Flaim, Kathleen A. Muldoon, Bethesda, Maryland, for Appellant. Robert W. Bohmer, WATKINS, BATES & CAREY, Toledo, Ohio, for Appellees. **ON BRIEF:** Edward L. Flaim, Kathleen A. Muldoon, Bethesda, Maryland, for Appellant. Robert W. Bohmer, John M. Carey, WATKINS, BATES & CAREY, Toledo, Ohio, for Appellees.

---

## OPINION

---

    BOYCE F. MARTIN, JR., Circuit Judge. We deal here, most regrettably, with a young man who made some unfortunate (and criminal) decisions and the administrators of a medical college who sought to expel him. Sean Michael Flaim was a third-year medical student attending the Medical College of Ohio. He was arrested and convicted of a felony drug crime. Medical College of Ohio subsequently expelled Flaim, who thereupon filed a sixteen-count complaint in federal district court naming Medical College of Ohio and various administrators, in their official and individual capacities, as defendants. The defendants filed a motion to dismiss, and upon receipt of the motion, the district court stayed discovery. On March 16, 2004, the district court granted in full the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Flaim's timely appeal followed, averring error with respect to only his procedural and substantive due process claims against the college administrators in their official capacities. Because

---

[*] The Honorable Donald P. Lay, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Medical College of Ohio's procedural approach was consistent with the bare-minimum requirements of due process, though perhaps less-than-desirable for an institution of higher learning, we affirm.

## I.

Flaim was arrested by Toledo police in October 2001 while at his off-campus apartment. At the time, Flaim was a third-year medical student. He was charged with Aggravated Possession of Drugs (Ecstasy), Aggravated Possession of Drugs (D.O.B.), Possession of Cocaine, and Drug Abuse-Possession of L.S.D., all in violation of state law. At the time of his arrest, the police also confiscated a nine millimeter handgun and $9,511 in cash. A grand jury then indicted Flaim on four counts of felony drug possession. He ultimately pleaded guilty to one count of the lesser included offense of Attempted Possession of Drugs, still a felony, and was sentenced to two years of unsupervised probation.

Two days after his arrest, Medical College of Ohio notified Flaim by letter that he was suspended "until external investigations/hearings [were] completed." The letter further informed Flaim of his right to an internal investigation. On the advice of counsel and in an effort to avoid incriminating himself, Flaim declined to schedule a Medical College of Ohio internal investigation until the pending criminal charges were resolved. Medical College of Ohio notified Flaim that he would not be permitted to return to campus until he participated in an internal hearing regarding the "conduct that gave rise to [the] criminal charges."

Flaim's roommate, who had also been arrested in October 2001, but who was only charged with a misdemeanor, was allowed to return to classes later that fall without a hearing. Flaim requested similar treatment, and also requested that Medical College of Ohio certify him to take Step 1 of the United States Medical Licensing Examination. Medical College of Ohio's general counsel informed Flaim that he would not be permitted to return to campus until the completion of an internal hearing on the matter. With the felony charges still pending, Flaim demurred.

In April 2002, Flaim's step-mother, who is an attorney, met with the Dean of Medical College of Ohio, Amira Gohara, with the goal of securing Flaim's return to campus. Dean Gohara informed Flaim's step-mother that Medical College of Ohio was under the impression that Flaim had withdrawn from school upon requesting a tuition refund. Shortly after this meeting, Medical College of Ohio again notified Flaim by letter that he could not return to campus without an internal hearing.

After pleading guilty to one felony drug offense in June 2002, Flaim initiated contact with Medical College of Ohio and requested an internal hearing. On June 21, Flaim received written notice that he was to appear before the college's Student Conduct and Ethics Committee on June 28 to answer the Committee's questions regarding his arrest. The notice informed Flaim that pursuant to Medical College of Ohio policy, only those facing pending criminal charges were entitled to counsel at the hearing and therefore, because the criminal proceedings had concluded, Flaim was not entitled to the presence of counsel. The notice stated, however, that it would make an exception for Flaim and allow his attorney to be present during the internal hearing. On June 26, Flaim contacted Dean Gohara further inquiring about the details of the hearing. Flaim was told that the college had obtained portions of his criminal record and that the arresting officer would testify at the hearing.

At the hearing, the arresting officer testified and Committee members were able to ask the officer questions. Flaim's attorney was not allowed to ask questions or speak with Flaim. Flaim was not permitted to cross-examine the officer. The Committee extensively questioned Flaim to elicit his account of events. At the end of the hearing, the Committee informed Flaim that it would prepare a written recommendation for Dean Gohara for her final consideration. A written recommendation was never prepared, but on July 9, Flaim received a one-page letter from Dean Gohara notifying him that he was expelled from Medical College of Ohio for "violation of institutional standards of conduct." Flaim then requested a meeting with Dean Gohara, at which he was told that the college had a "zero-tolerance policy" regarding drugs, that a

more specific reason for the decision would not be provided, that an appeal was not available, and that any further questions would have to be directed to the college's general counsel.

Flaim subsequently requested that Medical College of Ohio produce copies of all of his school records, including the Committee's written recommendation to Dean Gohara and a copy of the so-called zero-tolerance policy. Medical College of Ohio sent all records and documents except for the written recommendation and the zero-tolerance policy. Flaim then requested another hearing under Medical College of Ohio policy to correct his official record and to redress the denial of counsel at the hearing before Committee. Medical College of Ohio responded that because Flaim was no longer a student, he had no existing rights under any Medical College of Ohio policy. The college further stated that it had complied with its due process policy and therefore no further hearings would be held.

On appeal, Flaim argues that the district court erred in dismissing, for failure to state a claim, his procedural and substantive due process claims. Flaim also argues that the district court abused its discretion in barring discovery. For the reasons discussed below, we affirm the district court's judgment.

## II.

In this Circuit we have held that the Due Process Clause is implicated by higher education disciplinary decisions. *Jaksa v. Regents of Univ. of Mich.*, 597 F. Supp. 1245 (E.D. Mich. 1984), *aff'd*, 787 F.2d 590 (6th Cir. 1986) (finding due process clause implicated in suspension from university for cheating); *see also Goss v. Lopez*, 419 U.S. 565, 575 (1975) (liberty and property interest implicated in high-school suspension); *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Gorman v. Univ. of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988) (a student's interest "in pursuing an education is included within the fourteenth amendment's protection of liberty and property"). "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The amount of process due will vary according to the facts of each case and is evaluated largely within the framework laid out by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See also Gorman*, 837 F.2d at 12 (stating that due process is "not a fixed or rigid concept, but, rather, is a flexible standard which varies depending upon the nature of the interest affected, and the circumstances of the deprivation"). Because Flaim's case is a disciplinary expulsion, rather than an academic one, we conduct a more searching inquiry. *See Missouri v. Horowitz*, 435 U.S. 78, 86 (1978) (academic decisions "call[] for far less stringent procedural requirements").

Many times over the Supreme Court has made clear that there are two basic due process requirements: (1) notice, and (2) an opportunity to be heard. *See Goss*, 419 U.S. at 579 (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process is the opportunity to be heard.")); *Goldberg v. Kelly*, 397 U.S. 254 (1970). The type of notice and hearing will vary and be judged for sufficiency based on the context in which the dispute arose. In this case, Flaim argues that the process he was afforded was less than was required by his circumstances. He points to his very significant interest in his continued medical education and the attendant consequences of expulsion from medical school. Among his assertions of error are: (A) inadequacy of notice; (B) denial of a right to counsel; (C) denial of a right to cross-examine adverse witnesses; (D) denial of a right to receive written findings of facts and recommendation; and (E) denial of a right to appeal the school's decision to expel him.

Our analysis begins with *Goss v. Lopez.* There, a high-school student faced a ten-day suspension. The Court found both a due process property and liberty interest implicated by the potential suspension. Finding that the Due Process Clause applied, the Court held that the student was entitled to "some kind of notice" and "some kind of hearing." *Goss*, 419 U.S. at 579. In *Goss*, oral notice sufficed, and the Court held that due process is satisfied in that context, even if the student denies the charge, so long as the student is provided with an explanation of the evidence supporting the accusation and an opportunity to present an alternative version of the facts. *Id.* at 581. The Court's main concern was ensuring the presence of "fundamentally fair procedures to determine whether the misconduct has occurred." *Id.* at 574 (citing *Arnett*

*v. Kennedy*, 416 U.S. 134, 164 (1974)). Absent from *Goss*, however, was any requirement for the presentation of evidence against the accused, an opportunity for cross-examination, any representation (legal or otherwise), a transcript of the proceedings, or the opportunity for an appeal.

Two years later, in *Ingraham v. Wright*, 430 U.S. 651 (1977), the Court analyzed corporal punishment in public schools through the framework set out in *Mathews v. Eldridge*. With respect to the first prong, the Court found that students have a strong interest in adequate procedural safeguards to minimize the chance of wrongful punishment. *Id.* at 676. As to the second prong, the Court found that in the usual case, there is an insignificant risk of error because the teacher will have witnessed the misconduct immediately prior to imposing the corporal punishment. *Id.* at 676-78. And third, the Court found that additional procedures would unduly burden public-school officials. *Id.* at 680, 682.

The federal district and circuit courts, as well as numerous state courts, guided by *Mathews*, *Goss*, and *Ingraham*, have themselves reviewed countless disciplinary due process claims brought by students and faculty. *Ingraham*, applying *Mathews*, instructs that in determining the amount of process due, courts are to look at three factors: (1) the nature of the private interest affected — that is, the seriousness of the charge and potential sanctions, (2) the danger of error and the benefit of additional or alternate procedures, and (3) the public or governmental burden were additional procedures mandated. *Id.* at 676-82. Through these vague guideposts and their application to specific procedural regimes, a general outline of what's required and what's not comes into focus.[1]

Notice and an opportunity to be heard remain the most basic requirements of due process. Within this framework — and the generalized, though unhelpful observation that disciplinary hearings against students and faculty are not criminal trials, and therefore need not take on many of those formalities — the additional procedures required will vary based on the circumstances and the three prongs of *Mathews*. Beginning with notice, in *Goss* oral notice sufficed. The stronger the private interest, however, the more likely a formal written notice — informing the accused of the charge, the policies or regulations the accused is charged with violating, and a list of possible penalties — is constitutionally required. *Goss*, 419 U.S. at 584 ("Longer suspensions or expulsions . . . may require more formal procedures."); *Jaksa*, 597 F. Supp. at 1248-49. In some circumstances where factual issues are disputed, notice might also be required to include the names of witnesses and a list of other evidence the school intends to present. *Compare Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158-59 (5th Cir. 1961) (list of witnesses and evidence required when student not permitted to attend hearing) *with Nash v. Auburn Univ.*, 812 F.2d 655 (11th Cir. 1987) (list of witnesses and evidence not required when student is permitted to attend the hearing).

The hearing, whether formal, informal, live or not, must be meaningful and must provide the accused with the opportunity to "respond, explain, and defend." *Gorman*, 837 F.2d at 13. If the hearing is live, the accused has a right to be present for all significant portions of the hearing. Courts have generally been unanimous, however, in concluding that hearings need not be open to the public, *see e.g.*, *Hart v. Ferris State Coll.*, 557 F. Supp. 1379, 1389 (W.D. Mich. 1983) (no right to open hearing), that neither rules of evidence nor rules of civil or criminal procedure need be applied, *see e.g., Nash*, 812 F.2d at 665 (no right to use of formal rules of evidence); *Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 73 (4th Cir. 1983) (same); *Morale v. Grigel*, 422 F. Supp. 988, 1000-01 (D.N.H. 1976) (exclusionary rule need not be applied), and witnesses need not be placed under oath, *see e.g.*, *Knapp v. Jr. Coll. Dist.*, 879 S.W.2d 588, 592 (Mo. Ct. App. 1994).

Ordinarily, colleges and universities need not allow active representation by legal counsel or some other sort of campus advocate. *Jaksa*, 597 F. Supp. at 1252. *But see Gomes v. Univ. of Maine System*, 365 F. Supp. 2d 6, 16 (D. Me. 2005) (citing *Keene v. Rogers*, 316 F. Supp. 217, 221 (D. Me. 1970) ("the student

---

[1] "A university is not a court of law, and it is neither practical nor desirable it be one. Yet, a public university student who is facing serious charges of misconduct that expose him to substantial sanctions should receive a fundamentally fair hearing. In weighing this tension, the law seeks the middle ground." *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 16 (D. Me. 2005).

must be permitted the assistance of a lawyer, at least in major disciplinary proceedings"). In *Jaksa*, the court noted, however, that counsel may be required by the Due Process Clause to ensure fundamental fairness when the school proceeds through counsel or the procedures are overly complex. *Jaksa*, 597 F. Supp. at 1252. Other courts have concluded that the "weight of authority is against representation by counsel at disciplinary hearings, unless the student is also facing criminal charges stemming from the incident in question." *Gorman*, 837 F.2d at 16; *see also Gabrilowitz v. Newman*, 582 F.2d 100 (1st Cir. 1978) (right to counsel when criminal charges pending based on same incident).

An accused individual has the right to respond and defend, which will generally include the opportunity to make a statement and present evidence. It may also include the right to call exculpatory witnesses. *See e.g.*, *De Prima v. Columbia-Greene Cmty. Coll.*, 392 N.Y.S.2d 348, 350 (N.Y. Sup. Ct. Spec. Term 1977). Some circumstances may require the opportunity to cross-examine witnesses, though this right might exist only in the most serious of cases. *See Jaksa*, 597 F. Supp. at 1252; *Winnick v. Manning*, 460 F.2d 545, 549 (2d Cir. 1972); *Donohue v. Baker*, 976 F. Supp. 136, 147 (N.D.N.Y. 1997); *Lipsett v. Univ. of P.R.*, 637 F. Supp. 789, 813 (D.P.R. 1986) (right to cross-examine not absolute and depends on circumstances), *rev'd on other grounds*, 864 F.2d 881 (1st Cir. 1988).

It is always wise to produce some sort of record of the proceedings, whether it be a transcript or recording, though a record may not always be constitutionally required. *Jaksa*, 597 F. Supp. At 1252; *Trahms v. Trustees of Columbia Univ.*, 666 N.Y.S.2d 150, 151 (N.Y. App. Div. 1997). While due process may not impose upon the university the requirement to produce a record in all cases, fundamental fairness counsels that if the university will not provide some sort of record, it ought to permit the accused to record the proceedings if desired. *See Gorman*, 837 F.2d 7, 15-16 (1st Cir. 1988) (finding university provided written summary of testimony, evidence, and decision sufficient and therefore the Constitution did not require the university to permit the student to tape-record the hearing); *Slaughter v. Brigham Young Univ.*, 514 F.2d 622, 625 (10th Cir. 1975) (school permitted student to tape-record hearing).

An accused individual is generally not entitled to a statement of reasons for a decision against them, at least where the reasons for the decision are obvious. *Hall v. Med. Coll. of Ohio*, 742 F.2d 299, 310 (6th Cir. 1984)*; Jaksa*, 597 F. Supp. at 1253-54. Finally, due process generally does not require an appeal from a school's decision that was reached through constitutional procedures. *See e.g.*, *Foo v. Ind. Univ.*, 88 F. Supp. 2d 937, 952 (S.D. Ind. 1999). As discussed further below, most colleges and universities do wisely and justly provide for such appeals to all who are charged in a college or university setting.

The Due Process Clause, however, sets only the floor or lowest level of procedures acceptable. As the Supreme Court noted in *Goss*, however, and as we emphasize here again, the requirements mandated by the Due Process Clause afford, "if anything, less than a fair minded school [administrator] would impose upon himself in order to avoid unfair [decisions]." *Goss*, 419 U.S. at 583.[2] That being said, the procedures

---

[2]In *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150 (5th Cir. 1961), a case the Supreme Court referred to as a "landmark decision," *see Goss*, 419 U.S. at 576 n. 8, the Fifth Circuit outlined the nature of the notice and hearing requirements.

The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the Board of Education. The nature of the hearing should vary depending upon the circumstances of the particular case. The case before us requires something more than an informal interview with an administrative authority of the college. By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the Board or the administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required. Such a hearing, with the attending publicity and disturbance of college activities, might be detrimental to the college's educational atmosphere and impractical to carry out. Nevertheless, the rudiments of an adversary proceeding may be preserved without encroaching upon the interests of the college.

*Dixon*, 294 F.2d at 158-59. These basic, commonsense requirements, should not require a brain surgeon to understand.

used here were far from ideal and certainly could have been better; they were in the end, however, fundamentally fair, and we accordingly affirm the district court's judgment.

## III.

At the outset we note that Medical College of Ohio itself is no longer a defendant in this case. Flaim originally sued Medical College of Ohio in his sixteen-count complaint. Ultimately conceding that the Eleventh Amendment precluded a federal lawsuit against Medical College of Ohio, Flaim requested voluntary dismissal of the college as a defendant. The district court noted that Flaim's "clarification of his complaint negates the need for this court to address several of [his] arguments, including Eleventh Amendment immunity and its intricacies." Likewise we need not discuss the applicability of the Eleventh Amendment to the initial suit against Medical College of Ohio. Flaim now proceeds only against the college administrators and professors, in their official and individual capacities, and these claims are in no way precluded by the Eleventh Amendment.[3] We turn to them now.

This court reviews a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) de novo. *Arrow v. Fed. Reserve Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004). In order to survive a 12(b)(6) motion, the plaintiff's complaint must allege facts, which if proved, would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In reviewing the allegations, this Court "construe[s] the complaint in a light most favorable to the plaintiff, accept[s] all of the factual allegations as true and determine[s] whether the plaintiff can prove no set of facts in support of his claims that would entitle him to relief." *Arrow*, 358 F.3d at 393.

As noted above, *Mathews* instructs us to consider the private interest, the benefit of additional procedures, and the burden on the government. In our analysis below, we need not continually reiterate the strength of Flaim's private interest as it remains constant throughout our analysis. We recognize that his private interest is significant. It extends beyond his immediate standing at Medical College of Ohio and could "interfere with later opportunities for higher education and employment." *Goss*, 419 U.S. at 575. We understand the seriousness and the lifelong impact that expulsion can have on a young person as well as the significant financial costs already incurred. Our review of this matter, however, is circumscribed. We are limited to determining whether the procedures used by Medical College of Ohio were constitutional. Thus, below we consider the additional procedures requested, any error-reducing benefit those procedures might have, and the burden on Medical College of Ohio of adding those additional procedures.

### A. Sufficiency of Notice

Flaim argues that Medical College of Ohio failed to provide him with sufficient notice of the charges against him and the procedures that would follow. Notice, of course, is one of the most fundamental aspects of due process when the government seeks to deprive an individual of life, liberty, or property. The more serious the deprivation, the more formal the notice. *Goss*, 419 U.S. at 584. In the context of expulsion from an undergraduate university, "[t]he [written] notice should contain a statement of the specific charges and

---

[3]*See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (holding that suits for monetary damages against state officials in their official capacity are precluded by the Eleventh Amendment). The Supreme Court clarified its decision in *Will* in *Hafer v. Melo*, 502 U.S. 21, 27 (1991). "Hafer seeks to overcome the distinction between official- and personal-capacity suits by arguing that § 1983 liability turns not on the capacity in which state officials are sued, but on the capacity in which they acted when injuring the plaintiff. Under *Will*, she asserts, state officials may not be held liable in their personal capacity for actions they take in their official capacity. Although one Court of Appeals has endorsed this view, see *Cowan v. University of Louisville School of Medicine*, 900 F.2d 936, 942-943 (CA6 1990), we find it both unpersuasive as an interpretation of § 1983 and foreclosed by our prior decisions." The Supreme Court having rejected this Court's interpretation of *Will*, it made clear that suits under section 1983 are cognizable against "a state official in his or her official capacity, when sued for injunctive relief" *Will*, 491 U.S. at 71, n. 10, and against individual defendants in their personal capacities. Thus, Flaim's claim against the state officials in their official capacities is for prospective injunctive relief requiring his readmittance to medical school and his claim against the same defendants in their personal capacities is for monetary damages.

grounds which, if proven, would justify expulsion under the regulations of the Board of Education." *Dixon*, 294 F.2d at 158. Notice satisfies due process if the student "had sufficient notice of the charges against him and a meaningful opportunity to prepare for the hearing." *See Jaksa*, 597 F. Supp. at 1250, *aff'd* 787 F.2d 590.

As early as October 12, 2001, almost immediately after his arrest, Flaim received written notice from Medical College of Ohio that he was accused of violating two sections of College policies as a result of the state criminal charges. The notice identified the precise College policies that he was charged with violating. The notice also informed Flaim that he was suspended until external investigations/hearings were completed, and informed him that he had the right to an internal investigation in addition to the external investigation. A week later Flaim received additional written notice informing him that he was not permitted back onto campus until an internal hearing could be held regarding the conduct giving rise to the criminal charges. In the following six months, Flaim received two additional letters reminding Flaim that he was required to attend an internal hearing prior to returning to campus.

Flaim, however, chose not to request the internal hearing until his criminal charges were adjudicated. After pleading guilty, Flaim contacted Medical College of Ohio and stated that he wished to schedule his hearing. Medical College of Ohio then provided additional written notice on June 21, 2002, stating that he was required to appear in front of a disciplinary committee on June 28 due to his conviction for attempted possession of a controlled substance. The notice further informed Flaim that he would have the opportunity to present testimony and would be asked to respond to any questions the committee members might have.

Flaim's principal contention regarding notice is that the final notice on June 21 was insufficient because it failed to inform him of the evidence and/or testimony that the college would present and that the college did not produce a written report regarding the specifics of the charges against him. He further asserts that the notice was inadequate because it failed to inform him that the arresting officer would appear and because the notice did not include copies of any documents that Medical College of Ohio intended to produce at the hearing.

The notice provided by Medical College of Ohio, however, was more than adequate. All that is required by the Due Process Clause, which sets a floor or lower limit on what is constitutionally adequate, is "sufficient notice of the charges . . . and a meaningful opportunity to prepare for the hearing." *Jaska*, 597 F. Supp. at 1250. Flaim certainly received such notice here. Furthermore, considering that it was Flaim himself and not the college that delayed the hearing for six months, it is difficult to see how he was in any way deprived of sufficient opportunity to prepare for the hearing.

For the sake of completeness, we will further review the notice under *Mathews*, which counsels that

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (internal citation omitted). We have already clearly noted that Flaim has a significant interest in receiving adequate notice of the charges against him. Second, Flaim has failed to demonstrate any risk of erroneous deprivation of his rights through the notice procedure used. Flaim was clearly on notice as to the reasons for the hearing. He had already been convicted of a drug felony, a fact not likely to have escaped his grasp. We note that while Flaim's desire to have a comprehensive listing of evidence, witnesses, and copies of all documents intended to be produced is surely understandable given the penalty he was facing, we see no benefit to Flaim or any reduced risk of error by requiring such detail here. What Flaim asks for here would be nothing more than an additional and unnecessary expense and

administrative burden for the college without any corresponding benefit to Flaim. On these facts, *Mathews* does not require any more notice than Flaim received.

## B.  Right to Counsel

Flaim argues that he was denied the right to counsel at his disciplinary hearing in violation of the Due Process Clause. Prior to the hearing, Medical College of Ohio notified Flaim that its policy granted an accused student the right to counsel *only* if the student faced outstanding criminal charges at the time of the hearing. The notice further explained, however, that the college would allow Flaim to have his attorney present. At the hearing, while Flaim's attorney was permitted to remain in the room, Flaim was not permitted to consult with his attorney nor was the attorney permitted to participate in the proceedings. Flaim argues therefore, that Medical College of Ohio unfairly deceived him. We conclude, however, that Flaim was not denied due process based on these procedures.

Assuming Flaim was led to believe that he would be permitted to have active counsel at the hearing, it does not necessarily follow that what occurred violated his constitutional rights. As this Court has stated,

> It is not every disregard of its regulations [or assurances] by a public agency that gives rise to a cause of action for violation of constitutional rights. Rather, it is only when the agency's disregard of its rules [or assurances] results in a procedure which itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions.

*Bates v. Sponberg*, 547 F.2d 325, 329-30 (6th Cir. 1976). Assuming without deciding that there is a right to counsel in some academic disciplinary proceedings,[4] we think that the procedures utilized here were sufficient. In *Jaksa*, the court noted that a right to counsel may exist if "an attorney presented the University's case, or [] the hearing [was] subject to complex rules of evidence or procedure." *Jaksa*, 597 F. Supp. at 1252. Here, Medical College of Ohio did not present its case through an attorney. The hearing was not procedurally complex. There were no rules of evidence. Flaim was provided with an opportunity to appear in person before the committee to present his defense. Flaim was permitted to listen to adverse witnesses and to rebut that testimony while addressing the committee with his version of events. Flaim's complaint really boils down to the assertion that he was denied the opportunity to present his case as *effectively* as he would have wished — he could not reasonably claim that he was denied the *opportunity* to present his case at all due to the lack of legal counsel. Flaim's attorney may have been more articulate, but there is no indication that the hearing was so complex that only a trained attorney could have effectively presented his case. *See Jaksa*, 597 F. Supp. at 1252.

Under *Mathews*, Flaim does no better. While the additional safeguard of professional advocacy may lessen the risk of erroneous expulsion by improving the quality of the student's case, the administrative burdens to a university, in the business of education, not judicial administration, are weighty. Full-scale adversarial hearings in school disciplinary proceedings have never been required by the Due Process Clause and conducting these types of hearings with professional counsel would entail significant expense and additional procedural complexity. Moreover, the presence of an attorney, however articulate, would not likely have obscured from the Committee the fact of Flaim's felony drug conviction. We conclude that *Mathews* counsels against this additional procedural safeguard on these unique facts.

## C.  Cross-Examination

At the hearing, Flaim was not permitted to cross-examine the arresting officer. Flaim alleges that the officer's testimony was unreliable and contradictory. We assume that Flaim is asserting that if he were

---

[4]We need not consider here all the circumstances under which an accused may have a right to counsel. *See Jaksa*, 597 F. Supp. at 1252 n. 8 (discussing diversity of decisions on the right to counsel).

permitted to cross-examine the officer, he would have been able to expose the testimony's unreliability. In any event, at the hearing and prior to addressing the committee, Flaim was able to listen to and observe the officer's testimony. Flaim then had the opportunity to present his version of events, during which he had the opportunity to point out inconsistencies or contradictions in the officer's testimony.

In *Jaksa*, the court concluded that "[t]he Constitution does not confer on [an accused student] the right to cross-examine his accuser in a school disciplinary proceeding." 597 F. Supp. at 1252. The Second Circuit has also recognized that "[t]he right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings." *Winnick*, 460 F.2d at 549. Nonetheless, the court noted that "if this case had resolved itself into a problem of credibility, cross-examination of witnesses might have been essential to a fair hearing." *Id.* at 550. In *Winnick,* however, just as in Flaim's case, it was not a choice between believing an accuser and an accused, where cross-examination is not only beneficial, but essential to due process. Rather, the "critical fact" in *Winnick* was admitted by Winnick, *see id.*, just as Flaim does not deny his felony conviction. Moreover, Flaim has been unable to identify any benefits that cross-examination would have provided at his hearing (not to mention the administrative burden and expense) other than the assertion that he could have identified discrepancies in the officer's testimony. We assume that any discrepancies, to the extent they might have existed, would not have been sufficient to convince the Committee that Flaim had not been convicted of a felony. Flaim was given adequate opportunity to address any discrepancies in the officer's testimony during the hearing, "cross-examination would have been a fruitless exercise," *id.*, and Flaim was not denied due process here.

## D. Written Findings

Flaim asserts that he was denied due process because the committee did not produce written findings for his review.[5] He argues that the lack of written findings created a substantial risk that Dean Gohara expelled him erroneously or that she directed the committee to achieve her desired result. Once again, Flaim asserts that this right is based on college policy and/or the verbal or written assurances from the college. He cannot identify, however, any constitutional right to written findings of fact in an academic disciplinary hearing of this ilk and we accordingly reject his claim.

In *Jaksa*, the court concluded that the student did not have a constitutional right to written findings of fact. 597 F. Supp. at 1253. We think the court's reasoning applies with equal force here. We do not see any risk that Flaim was erroneously expelled because the committee failed to issue formal findings for Dean Gohara's review as opposed to providing her with a verbal report. Moreover, Flaim knew that the committee and Dean Gohara were in possession of perhaps the most important finding of fact — Flaim's record of a felony drug conviction. Of course, while the additional cost to the college of producing a written report would likely be minimal, the additional safeguard in this case is negligible. Acknowledging the flexibility of the Due Process Clause, we recognize there may be some proceedings where written findings of fact would be required. These facts, however, do not warrant such a safeguard.

## E. Right to Appeal

Flaim also takes issue with the finality of Dean Gohara's decision. He argues that he had a right to appeal based on Medical College of Ohio policy, past college practice, and policy requirements from the accrediting body for all United States medical schools. Nonetheless, he fails to tie any of these points to a constitutional right to appeal the decision of an academic institution. Courts have consistently held that there is no right to an appeal from an academic disciplinary hearing that satisfies due process. *See Smith on Behalf of Smith v. Severn*, 129 F.3d 419, 428-29 (7th Cir. 1996) ("Due process does not require review

---

[5]Flaim did of course receive a letter from Dean Gohara informing him that he was expelled for the conduct that gave rise to his felony conviction. Flaim apparently desired more formal findings, and while it would be helpful to us and perhaps more just for the college to explain the basis for its decision, the Due Process Clause does not require such findings in this specific disciplinary context, where the findings were self-evident.

by a school board."); *Winnick*, 460 F.2d at 549 n. 5 ("Winnick had no constitutional right to review or appeal after the disciplinary hearing which satisfied the essential requirements of due process."); *Foo v. Tr., Indiana Univ.*, 88 F. Supp. 2d 937, 952 (S.D. Ind. 1999).

Under *Mathews*, Flaim's claim still fails. Disciplinary hearings, of course, are not flawless. "The risk of error is not at all trivial, and it should be guarded against if that may be done without prohibitive cost or interference with the educational process." *Goss*, 419 U.S. at 580. An appeal's value would be in correcting any such error that might have occurred, even in proceedings satisfying due process. The cost to the college, however, would be substantial, and given the procedural posture of the hearing, we conclude that an appeal was not required in this case.

The costs to the college would include an additional administrative burden on the Dean and other faculty members and administrators involved in the process. The proceedings would be a distraction from the college's primary duty of educating. Additionally, Flaim's internal hearing came after the conclusion of formal state criminal proceedings. We will not speculate as to the outcome were Flaim's internal hearing to have occurred prior to the resolution of the state criminal proceedings, but only note that Flaim came before the committee after having pleaded guilty to state criminal drug charges. While his guilt was not at issue before the committee, there is still the theoretical possibility that Flaim was erroneously expelled because another lesser punishment was more appropriate. This possibility, however, is not sufficient to turn this case in his favor.[6]

In reviewing the procedures used by Medical College of Ohio, the Due Process Clause requires us to look at the specific facts of the case and consider Flaim's private interest, the benefit any additional requested procedures would have in reducing the risk of an erroneous expulsion, and the burden on Medical College of Ohio of imposing additional procedures. Flaim's case, we believe, is *not* the ordinary disciplinary case, and is (hopefully) rather unique. Flaim's expulsion was based on an already adjudicated felony conviction. It was not a case involving factual disputes where many of the additional procedures would be helpful in determining "whether the misconduct [such as cheating] has occurred." *Goss*, 419 U.S. at 574 (citations omitted). Medical College of Ohio based its decision essentially upon a certified record of a recent felony conviction.[7] This, we conclude, makes Flaim's case quite different from the ordinary disciplinary case, and rendered many of the ordinarily required procedures constitutionally unnecessary.[8]

## IV.

Flaim also alleges that Medical College of Ohio violated his substantive due process rights in that the college's actions in expelling him "shock the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). In *Dixon*, the court stated that "the governmental power to expel [a student] . . . is not unlimited and cannot be arbitrarily exercised. Admittedly, there must be some reasonable and constitutional ground for expulsion or the courts would have a duty to require reinstatement." 294 F.2d at 157. The plaintiffs in *Dixon*, a case argued by Jack Greenberg and Thurgood Marshall, were African-American

---

[6]We do note, however, that all accredited medical schools are required to provide appeals, and thus, many institutions do provide a right to appeal. An appeal is valuable for many reasons, among them being the gravity of the decision to expel a student from medical school, the personal and professional consequences an expelled student will face, the institution's role as an educator and teacher of young people, and more. An appeal also provides additional assurance to the institution that a just result has been reached and provides the student with, irrespective of the outcome, significant participation value.

[7]We strongly emphasize that a disciplinary hearing involving a record of conviction is wholly different from a case involving disputes of fact, even if the university believes the evidence to be overwhelming.

[8]It is because of the unique facts of this case that we find the procedures used by Medical College of Ohio adequate. We decline to address whether these procedures would suffice under other facts.

students and were expelled for seeking to purchase lunch at a publicly owned grill in the basement of the Montgomery, Alabama, county courthouse. *Id.* at 152 n.3. That expulsion shocks the conscience. Flaim's expulsion does not and it was supported by substantial evidence. Accordingly, we agree with the district court's conclusion that Flaim failed to state a cognizable substantive due process claim.

## V.

Flaim's final argument is that the district court abused its discretion in barring discovery *sua sponte*. Federal Rule of Civil Procedure 26(c) provides the district court with discretion to limit discovery "[u]pon motion by a party or by the person from whom discovery is sought." Fed. R. Civ. P. 26(c).

The Ninth Circuit addressed this issue in *Jarvis v. Regan*, 833 F.2d 149 (9th Cir. 1987). There, the court concluded that "[d]iscovery is only appropriate where there are factual issues raised by a Rule 12(b) motion." *Id.* at 155. Where the district court accepts the plaintiff's allegations as true, but concludes that those allegations are insufficient as a matter of law, it is not an abuse of discretion to limit discovery *sua sponte*. *Id.* Here, given the highly exaggerated nature of Flaim's initial complaint, and the fact that Medical College of Ohio filed a Rule 12(b)(6) responsive motion that, among other things, raised the defense of qualified immunity, it was not unreasonable for the district court to conclude that the case could be disposed of on the face of the complaint and that discovery would not affect the outcome. We therefore agree with the *Jarvis* court and conclude that the district court in this case did not abuse its discretion in limiting discovery pending its resolution of Medical College of Ohio's 12(b)(6) motion.

The district court's judgment is affirmed.