**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0733n.06

**No. 11-1698**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jul 09, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| HANNA JABER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| WAYNE STATE UNIVERSITY BOARD OF | ) | |
| GOVERNORS; PAULA C. WOOD, | ) | |
| | ) | |
| Defendants-Appellees, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WAYNE STATE UNIVERSITY; | ) | |
| JAY NOREN, | ) | |
| | ) | |
| Defendants. | ) | |

BEFORE: SUTTON and GRIFFIN, Circuit Judges; HOOD, District Judge[*]

SUTTON, Circuit Judge. Hanna Jaber claims that the Board of Governors of Wayne State University and Dean Paula C. Wood violated her due process rights when they revoked her doctoral degree. The district court granted summary judgment to the Board and Wood, holding that the university gave her all of the process she was due. We agree.

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

I.

In 2008, Jaber, an Arab-American, received her doctorate in education from Wayne State University. Later that year, university officials became suspicious of her dissertation and analyzed it with plagiarism-detecting software. The software flagged numerous instances of potential plagiarism. Based on the software results and a comparison of Jaber's work with these sources, officials referred the case to Rick Earnest, the Associate Dean of Students and Student Conduct Officer. In November 2008, Earnest wrote Jaber accusing her of plagiarizing at least two dozen passages in her dissertation and noting that Jaber could be subject to "the full range of sanctions." R.31-15, Page ID 517. Earnest referred the case to Paula Wood, the Dean of the College of Education. In January 2009, Wood wrote Jaber explaining that, due to the serious nature of the charges, Jaber was required to elect a formal procedure with a hearing panel or an informal conference with Wood to resolve the matter. If Jaber selected the informal conference, the letter explained, "the full range of sanctions authorized by the Student Code of Conduct may be imposed and the right of appeal . . . will not apply." R.31-17, Page ID 522. Earnest recommended that she opt for an informal conference with Wood, telling her that Wayne State had never before revoked a degree but that it remained possible her "degree would be rescinded." R.31-3, Page ID 249.

Jaber opted for the informal conference with Wood. There, Wood reviewed some of the instances of plagiarism, many of which Jaber challenged as mere citation mistakes. The conference lasted forty-five minutes. Weeks later, Wood sent Jaber a letter revoking her doctoral degree. In reaching her decision, Wood reviewed a copy of Jaber's dissertation annotated with twenty-seven

instances of alleged plagiarism, the results of the plagiarism-detection software, emails from two members of Jaber's dissertation committee recommending that she be allowed to correct the improper citations, and Jaber's defense that some passages did not amount to plagiarism. Wood explained that, even ignoring the passages that Jaber said were not plagiarized, "there remains a substantial and significant amount of plagiarism in the dissertation." R.31-8, Page ID 526. Wood acknowledged the support of two of Jaber's dissertation committee members but noted it was unclear if they were fully informed of the charges or had reviewed an annotated copy of the dissertation.

This was not Jaber's first run-in with university officials. In 2002, Jaber submitted a false teacher certification exam score, stating she had passed the biology section of the state exam when she had not. The made-up score allowed her to obtain a biology teaching certificate in Michigan. When confronted with these charges in 2008, Jaber chose the formal hearing procedure and admitted responsibility. The hearing panel placed a permanent notation on her transcript, barred her further admission to the College of Education and future employment at Wayne State, and notified the Michigan Department of Education.

After the school revoked her degree, Jaber filed this § 1983 action in state court. The defendants removed the action to federal court. As amended, the complaint charges a violation of due process, race discrimination, negligence and intentional infliction of emotional distress. R.5. The district court rejected all of Jaber's claims as a matter of law. Jaber appeals the rejection of the due process claim.

II.

The Due Process Clause of the Fourteenth Amendment prohibits States from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To establish a cognizable claim under the clause, Jaber must show that the State (1) deprived her (2) of a protected interest (3) without adequate process—notice and an opportunity to be heard. *See Goss v. Lopez*, 419 U.S. 565, 579 (1975); *Albrecht v. Treon*, 617 F.3d 890, 894 (6th Cir. 2010). Jaber readily satisfies the first two requirements. The State deprived her of a protected property interest: her degree. *United States v. Frost*, 125 F.3d 346, 367 (6th Cir. 1997). The question is whether the university gave Jaber sufficient notice and an opportunity to be heard. In claiming it did not, Jaber raises three arguments.

*First*, Jaber says she received insufficient notice that the university could revoke her degree, reasoning that neither the student code of conduct nor any of the letters from Earnest or Wood said any such thing. That may or may not be true. But it matters not. In speaking with university officials before the hearing, Jaber received actual notice that her degree could be revoked if she were found responsible for plagiarism. She acknowledged being told it was possible that her degree could "be rescinded," R.31-3, Page ID 249, and "was told that revocation was a possibility," Appellant's Br. 24. Oral notice of potential sanctions, to say nothing of actual knowledge, sufficed here. *See Flaim v. Medical Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005); *Moreau v. F.E.R.C.*, 982 F.2d 556, 569 (D.C. Cir. 1993).

That university officials told Jaber that Wayne State had never revoked a degree does not change anything. There is a first time for everything. And Jaber was told that this first time could

be with her. When all is said and done, this notice allowed her to prepare for the informal conference and defend against the charges in a meaningful, informed manner, which is all that matters, at least when it comes to notice. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978).

*Second*, Jaber says that the informal conference did not provide a sufficient opportunity to be heard. A threshold problem with this argument is that Jaber herself chose an informal conference with Wood over a formal hearing. And she had every reason to know what she was getting into when she made the choice: The code of conduct spells out the differences between an informal conference and a formal hearing, and Jaber had been through the university disciplinary system once before. Under the code of conduct, a student electing an informal conference has the right to respond to evidence, call appropriate witnesses and be accompanied by an attorney, all of which she was allowed to do and all of which accords with due process. *See Flaim*, 418 F.3d at 636.

Consistent with the code of conduct, Wood gave Jaber an adequate opportunity to present her case in the informal conference. Jaber met with Wood for approximately forty-five minutes, explaining that many of the alleged instances of plagiarism were merely incorrect citations. After the conference, Wood sent Jaber a letter describing the decision-making process. Wood explained that, for the purposes of her decision, she ignored the passages Jaber contested, indicating she considered all of Jaber's arguments. Wood listed all of the evidence she took into account, including evidence Jaber submitted in her defense. And Wood summarized all of the arguments Jaber made during the conference. Although Jaber faults Wood for not speaking with her dissertation committee

members, Wood explained that she had read their supportive emails and had no other reason to contact them. Perhaps most importantly, Jaber could not identify any additional information Wood should have considered—from anyone.

Jaber adds a conclusory allegation that Wood was biased. But she never backs it up with evidence or otherwise explains how or why Wood was biased. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 331 (6th Cir. 2008) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotation marks omitted).

None of this offends due process. Yes, the interest at stake—revocation of a doctoral degree—is significant. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). But plagiarizing a doctoral thesis is also significant, an infraction that risks impugning a university's integrity. "Awarding degrees to . . . students who have not earned them, will decrease the value of degrees in general. More specifically, it will hurt the reputation of the school and thereby impair its ability to attract other students willing to pay tuition, as well as its ability to raise money." *Frost*, 125 F.3d at 367. Any risk of wrongly sanctioning Jaber was low given the procedures the university employed. *See Mathews*, 424 U.S. at 335. Jaber's dissertation was run through two pieces of software to detect plagiarism. No fewer than four university officials—Dr. Hillman, Assistant Dean Roney, Student Conduct Officer Earnest and Dean Wood—examined the evidence against her at various stages of the investigation. And Jaber presented her case and evidence in an informal hearing. As for the possibility of alternative procedures, *Mathews*, 424 U.S. at 335, Jaber (as noted) had the right to present her case to a formal hearing panel of three faculty members and two

students—allowing even more individuals to consider the merits of her arguments—and had the right to appeal. When accused of fraudulently obtaining a teaching certification just months before the degree-revocation hearing, Jaber indeed invoked that very procedure. For reasons of her own, she did not request it here.

*Third*, Jaber says that only the Board, not the Dean, has the authority under Michigan law to revoke degrees, making the Dean's decision a due process violation. But the failure to follow a state law or procedure does not itself violate due process. *See DePiero v. City of Macedonia*, 180 F.3d 770, 787–88 (6th Cir. 1999). "[I]t is only when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions." *Bates v. Sponberg*, 547 F.2d 325, 329–30 (6th Cir. 1976). The question thus is not whether Wood acted *ultra vires*; it is whether the process followed, including notice of the charges and the informal conference with Wood, meets due process. *See JiQiang Xu v. Mich. State Univ.*, 195 F. App'x 452, 457 (6th Cir. 2006). As shown, no such problem arose. To the extent Jaber means to raise a separate, stand-alone argument that the university improperly revoked her degree under Michigan law, that is a new legal theory she did not raise below. It thus is forfeited. *See Estate of Quirk v. C.I.R.*, 928 F.2d 751, 757–58 (6th Cir. 1991).

III.

For these reasons, we affirm the judgment of the district court.