NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0222n.06

Case No. 21-3768

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 03, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| CLARK A. ROBERTSON, | ) | |
| Plaintiff-Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| UNIVERSITY OF AKRON SCHOOL OF LAW, et al., | ) ) ) | OPINION |
| Defendant-Appellees. | ) ) | |

Before: McKEAGUE, NALBANDIAN, and READLER, Circuit Judges.

**McKEAGUE, Circuit Judge.** Clark Robertson was a student at the University of Akron School of Law. After a troubled year-and-a-half enrolled, during which time Robertson alleges he was subject to harassment because of his age and mental health diagnosis of anxiety, things came to a head when he left a voicemail that school officials interpreted as a statement of suicidal intent. He was then involuntarily committed by school police officers and suspended indefinitely pending a disciplinary hearing. Robertson brought this complaint, bringing as relevant here a variety of constitutional claims under 42 U.S.C. § 1983 against University of Akron School of Law officials and University of Akron police officers, and a claim for disability discrimination under the Rehabilitation Act against the University of Akron School of Law. The district court granted defendants' motion for judgment on the pleadings and dismissed Robertson's claims with prejudice. We AFFIRM.

I.

Clark Robertson enrolled at defendant University of Akron School of Law in January 2017 with a $15,000 yearly scholarship. Robertson was a nontraditional student, enrolling in his sixties having already obtained two L.L.M.s and a J.D. A veteran, Robertson had been receiving social security disability benefits for two years prior to reaching retirement age because of a mental health disability of anxiety.

During his time at University of Akron, he alleges that he was "continually harassed and ridiculed . . . based on his age and mental health disability" by students and by defendants Dean Christopher J. Peters and Assistant Dean Charles Oldfield. He alleged that "Defendant [l]aw [s]chool personnel circulated emails containing disparaging remarks" about him, calling him an "odd duck."

In November 2017, Robertson alleges that Dean Oldfield was going to prohibit Robertson from sitting for an exam unless Robertson got evaluated for a psychiatric disorder. alleges that the purpose of this evaluation was to have him involuntarily committed to a psychiatric hospital. The diagnosing psychiatrists confirmed that he had anxiety but otherwise released him. Robertson alleges that he was medically unable to take the exam following this evaluation, and that he was prohibited from taking a make-up examination that the school allowed for students without a mental health disability.

That same month, Robertson alleges that Dean Oldfield forced him to obtain counseling services from the University counseling center. Robertson also alleges that Dean Oldfield inspected Robertson's locker "[w]ithout cause" and asked him to open his bassoon case. *Id.* ¶ 13.

In March 2018, Robertson filed a complaint with the U.S. Department of Education Office for Civil Rights. On August 13, 2018, the parties met for a facilitated mediation. Robertson alleges that the mediator told him to drop the charges because of stress, and he did so.

On August 17, 2018, Robertson alleges that "certain Defendants engaged in further acts of harassment toward [him]." *Id.* ¶ 16. Specifically, he claims that Dean Oldfield told him that he "was going to f[***] his crazy ass." *Id.*

Because of this incident, on August 29, 2018, Robertson called the Office of Civil Rights mediator. He stated that he wanted to file a claim for retaliation because "they are discriminating [because of] my age and it is not right." *Id.* ¶17 (alteration in original). He said that he "did not want to commit suicide." But he continued that if they "want to push [him] to the edge … [he] will put them on the map … it will absolutely be a nasty mess." *Id.* (alterations in original).

After receiving Robertson's voicemail, the mediator forwarded the voicemail to her supervisor, who in turn forwarded it to law school personnel.

That afternoon, Robertson was meeting with nondefendant law school personnel requesting permission to drop his classes. "Defendant law school deans" contacted the University police department to take Robertson into custody. *Id.* ¶ 20. "Defendant Police officers" interviewed Robertson. *Id.* ¶ 21. Robertson told them that he did not own a gun and had no intention to harm himself or others, and that his statements about a "nasty mess" and putting "them on the map" were about his planned legal proceedings. *Id.* Robertson also told them to contact his physician, who he had spoken with earlier that day. His physician had not found him to be suicidal but diagnosed him with generalized anxiety disorder and moderate depression.

Robertson alleges that "Defendant law school personnel" then directed the police officers to listen to the voicemail. *Id.* ¶ 22. Robertson alleges that the officers then took him into custody

because they suspected him to be a danger to himself or others. Officer Wayner drove Robertson to Summa Health Akron Emergency Department. On the way, Robertson alleges that Wayner left him in the car with the windows rolled up while the ambient temperature was over ninety degrees. This left Robertson dehydrated and with an acute kidney injury; he was placed on a saline drip for his first twenty-two hours in the hospital.

After a psychiatric evaluation, Robertson was transferred to a psychiatric hospital. Robertson alleges that he was coerced into signing voluntary admission paperwork; he was committed for eighteen days.

On August 30, 2018, the day after Robertson left the voicemail and was taken into custody, the University of Akron School of Law sent Robertson a letter informing him that he was banned from the university campus and would be subject to criminal trespass charges if he returned. The letter informed Robertson of a scheduled hearing regarding his conduct violation, where it would be determined if this disciplinary action was merited and if he should be excluded permanently from the University. The University's "written materials" noted that Robertson would be allowed an advisor for emotional support, who could be an attorney, but that the advisor would not be allowed to speak or cross-examine witnesses. *Id.* ¶ 28.

Robertson alleges that he objected to "being denied his right to legal counsel, his right to speak, and his right to cross-examination." *Id.* ¶ 30. His objections, he alleges, went ignored. He does not indicate to whom he communicated these objections.

Robertson "declined to attend the purported hearing," and he remains suspended from the campus. *Id.* ¶ 31.

Robertson brought an 11-count complaint against the University of Akron School of Law, Dean Christopher J. Peters, Assistant Dean Charles Oldfield, Interim President of the University

of Akron John C. Green, Chief of the University of Akron Police Department Dale E. Gooding Jr., University of Akron Police Officers James P. Weber, Todd R. Hough, Thomas A. Gedeon, and Thomas Wayner, Summa Health System, and Dr. Thomas Gspandl. All defendants answered Robertson's complaint and all moved for judgment on the pleadings. Robertson then moved to voluntarily dismiss multiple counts of his complaint against certain defendants, which the district court granted without prejudice. The district court then granted defendants' motions on the remaining claims and dismissed them with prejudice.

Robertson appeals the district court's dismissal of his remaining claims with prejudice. He notes in his briefing that he "dismiss[es]" President Green and Chief of Police Gooding, and that "[a]lthough he believes the court's dismissals of the claims against Summa Hospital and Dr. Gspandl were in error, Rob[ertson] . . . focus[es] this appeal on the most important claims . . ." Appellant's Br. at 3. He similarly notes that he does not appeal his 42 U.S.C. § 1983 claims against the University or its employees acting in their official capacity, his § 1983 Fifth Amendment claim, his constitutional conspiracy claims, or his constitutional failure to intervene claims. Robertson has therefore forfeited all but his remaining § 1983 claims against Dean Peters, Assistant Dean Oldfield, and Officers Weber, Hough, Gedeon, and Wayner; and the Rehabilitation Act claims against the University of Akron School of Law.

## II.

We review the grant of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as we would review the grant of a motion to dismiss under Rule 12(b)(6). *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020). We review de novo, accepting all factual allegations as true. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). We need not accept legal conclusions, however, and the factual allegations must "plausibly give rise to an

entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246–47 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## A.  § 1983 Claims

Robertson brings a 42 U.S.C. § 1983 claim against Deans Oldfield and Peters and Officers Weber, Hough, Gedeon, and Wayner, alleging a variety of violations of his constitutional rights. The district court granted defendants' motion for judgment on the pleadings on the grounds that Robertson's complaint grouped defendants together in such a way that it failed to place individual defendants on notice of their liability.

"This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) (citing *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Conclusory allegations that "the 'Defendants'" violated Robertson's constitutional rights are insufficient. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019). Accordingly, for each defendant, Robertson must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Robertson's complaint falls well short of that requirement. He presents a factual narrative that includes several allegations of bad behavior on the part of various defendants. For some of these events, he then alleges that this action violated his constitutional rights. *See, e.g.*, R. 1, ¶ 29 (alleged procedural deficiencies in disciplinary hearing violated his due process rights). In others,

he merely asserts that their conduct was unlawful in an unspecified way. *See, e.g.*, R. 1, ¶ 12. In Count I, he then lays out the basic elements of a § 1983 claim, stating broadly that "Defendant individuals . . . under color of state law, violated Plaintiff Robertson's federally protected rights, privileges, and immunities secured by the First, Fourth, Fifth, Eighth and Fourteenth Amendments," and then proceeds to list six generally defined rights that the Defendants' actions allegedly violated: the "right to free speech," the "freedom from mental and physical injury during custody," "invasion of privacy," "denial of liberty and property rights," "denial of procedural and substantive due process of law," and the "right to silence." R. 1, ¶ 33; 34. Such language is insufficient to "connect specific facts or events with the . . . cause[] of action [he] assert[s]." *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392 (6th Cir. 2020) (quoting *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013)).

On appeal, Robertson clarifies three claims, each of which does contain more specific allegations pertaining to the actions of certain defendants: (1) the alleged procedural deficiencies in the notice he received from the law school regarding his suspension, (2) his allegedly unlawful involuntary commitment by the defendant officers and deans, and (3) the injury he sustained while in Officer Wayner's custody. None state a plausible claim for relief.

*Suspension and hearing*. Robertson argues that he sufficiently pleaded facts against Dean Peters regarding Robertson's suspension and hearing. He argues that Peters "advised Robertson of the scheduled disciplinary hearing without due process protections" and told Robertson "that he was banned from campus, another constitutional and/or Rehabilitation Act violation." Appellant's Br. at 15. As an initial matter, the complaint suggests that it was Interim President Green, not Dean Peters, who issued the suspension without a hearing. The only mention of Dean Peters in the complaint in relation to this incident is a reference to "Interim President Peters." R. 1 ¶ 28.

Even construing this as a reference to Dean Peters, merely sending Robertson a notice of a disciplinary hearing does not violate Robertson's procedural due process rights. Such a notice is in line with the minimum due process protections for university disciplinary proceedings. *See Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 638–39 (6th Cir. 2005). Robertson additionally alleges that "Defendant law school and Deans unlawfully denied the lawyer or advisor his right to speak and cross-examine Defendants' witnesses." R. 1 ¶ 29. But he does not specify which Dean denied him these rights, and in any event he was not in fact denied his alleged right to an attorney or to cross-examine witnesses because the hearing never occurred.

*Involuntary commitment.* As for Robertson's claim that defendant officers unlawfully committed him, he fails to articulate a theory as to how his commitment violated the federal constitution. On appeal, he describes his claim as implicating "liberty, procedural and substantive due process, and improper seizure." Appellant's Br. at 3. But he makes no argument as to how his complaint makes out any claims related to those asserted rights. Indeed, the complaint itself describes only how his seizure and detention violated state law concerning the involuntary commitment process, Ohio Revised Code Chapter 5122. Section 1983 does not provide a remedy for violations of state law. *See Michael v. Ghee*, 498 F.3d 372, 376 (6th Cir. 2007). And Robertson does not appeal the district court's dismissal of his claim under Ohio Revised Code Chapter 5122. The only aspects of the allegation that make out anything resembling a constitutional claim is his reference to a "deprivation of liberty." R. 1, ¶ 22. Absent any factual specificity as to why Robertson's detention was constitutionally unlawful, his claim against the defendant officers amounts to a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements," that is insufficient to state a claim. *Iqbal*, 556 U.S. at 678.

*Custody in police car.* Robertson's most specific allegation of harm is that Officer Wayner injured him by leaving him in a hot police car for a half hour, leaving him dehydrated and requiring medical attention at the hospital. But nothing in the complaint links this incident to any legal theory for relief, let alone makes out any of the elements of a constitutional claim beyond his recital of the general requirements of § 1983. In his appellate brief, Robertson refers to this as an "Eighth Amendment" claim, but of course the Eighth Amendment is only triggered following criminal conviction. *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). Even if construed under the Fourteenth Amendment as it applies to pretrial detainees, Robertson has failed to provide Officer Wayner with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (quotation omitted).

## B. Rehabilitation Act Claim

Robertson also appeals the district court's dismissal of his Rehabilitation Act claim against the University of Akron School of Law. The Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Count VI, Robertson's Rehabilitation Act claim, states that the University of Akron School of Law "violated the Rehabilitation Act of 1973 by failing to accommodate [Robertson]'s disabilities." R. 1, ¶ 63. But "[i]t is well settled in cases brought under the Rehabilitation Act . . . that reasonable accommodation is not at issue if the plaintiff has never requested accommodations." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 n. 4 (6th Cir. 1998) (citations omitted). Robertson never alleges that he requested an accommodation on the basis of

his disability, nor does he plead any facts that suggest something that might be construed as a request for accommodation.

In his briefing, Robertson characterizes his Rehabilitation Act claim as a disability discrimination claim, rather than a failure to accommodate claim. But even if the complaint is construed so generously, Robertson fails to state a plausible claim for relief. To make out a discrimination claim under the Rehabilitation Act, Robertson must show that he 1) has a disability, 2) was otherwise qualified for a program or activity, 3) is being excluded from, denied the benefits of, or otherwise being subjected to discrimination as part of that program or activity solely by reason of his disability, and 4) the relevant program or activity receives federal assistance. *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 241 (6th Cir. 2019).

Robertson fails to allege facts pertaining to the third prong. Robertson alleges that "Defendants' determination that [Robertson] holds a direct threat to the health or safety of others was based on the generalization and stereotypes about the effects of a specific disability." R. 1 ¶ 58. Other than this statement, which is both conclusory and nonspecific, every factual allegation of discrimination in the complaint alleges that Robertson was discriminated against on the basis of age and disability, not disability alone. And although plaintiffs may plead alternative and contradictory theories of relief, Robertson's sole allegation of discrimination is his claim under the Rehabilitation Act, which requires that discrimination be solely because of disability. *See Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002). Without more, Robertson fails to have alleged sufficient factual matter to state a plausible claim under the Rehabilitation Act. *See Iqbal*, 556 U.S. at 678.

III.

Finally, Robertson challenges the district court's dismissal of his claims without granting him leave to amend his complaint. If a district court denies a motion to amend a complaint for futility, we review it de novo. *See Baaghil v. Miller*, 1 F.4th 427, 432 (6th Cir. 2021). Otherwise, as is the case here, we review for abuse of discretion. *See Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017).

Leave to amend is to be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). But Robertson did not properly request leave to amend. He provided the district court with a one-sentence request that "the court permit him to file an Amended Complaint" if "this court finds that the Complaint is deficient in any manner." R. 14, PageID 123. "A request for leave to amend 'almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is ... not a motion to amend'" such that Rule 15(a)(2) applies. *La. Sch. Emp. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000). Robertson also failed to include any copy of a proposed amended complaint or any indication of what an amended complaint might include. Absent a proper motion or a copy of an amended complaint, the district court did not abuse its discretion in denying Robertson's one-sentence request. *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014).

V.

Because we agree that Robertson failed to state a claim for relief, and because the district court did not abuse its discretion in denying Robertson leave to amend his deficient complaint, we AFFIRM.