RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0068P (6th Cir.)
File Name: 02a0068p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

TREVOR CARTEN,
    *Plaintiff-Appellee,*

  *v.*        No. 98-3150

KENT STATE UNIVERSITY, et al.,
    *Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 97-02757—David D. Dowd, Jr., District Judge.

Submitted: December 7, 2001

Decided and Filed: February 25, 2002

Before: SILER and BATCHELDER, Circuit Judges;
HOOD, District Judge.[*]

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky sitting by designation.

1

————————————

**COUNSEL**

**ON BRIEF:** Stephen J. Pruneski, Robert F. Linton, Steven L. Paulson, RODERICK, MYERS & LINTON, Akron, Ohio, for Appellants. Robert Troll Lynch, Cleveland Heights, Ohio, for Appellee.

————————————

**OPINION**

————————————

JOSEPH M. HOOD, District Judge. Defendants-Appellants Kent State University ("KSU") and doctors Gary Neiman, Rosemary Dumont, William Canyon, and Danny Wallace appeal the district court's partial denial of their motion to dismiss. Defendants argue that the district court erred by holding that the Eleventh Amendment did not bar the claims of Plaintiff-Appellee Trevor Carten ("Carten") under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-65, and § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"). Based on new law from the Supreme Court and this circuit, we **REVERSE** the district court as to Plaintiff's ADA Title II claims for money damages against KSU and the individual defendants, as well as his ADA Title II claim for equitable relief against KSU. We **AFFIRM** the district court in all other respects.

**FACTS**

KSU accepted Carten as a graduate student in its School of Library and Information Services on July 12, 1994. On August 23, 1995, KSU dismissed Carten for poor academic performance. KSU affirmed Carten's dismissal in a September 15, 1995 hearing. On October 29, 1997, Carten filed suit in district court against the university and doctors Neiman, Dumont, Canyon and Wallace ("the Doctors"), alleging violations of ADA Title II, § 504 of the Rehabilitation Act, and Chapter 41 of the Ohio Revised Code.

relief to end a continuing violation of federal law. *See Ex parte Young,* 209 U.S. 123 (1908). Finally, a state may waive Eleventh Amendment protection. *See Lawson v. Shelby County*, 211 F.3d 331 (6th Cir. 2000).

In *Nihiser v. Ohio EPA*, 269 F.3d 626 (6th Cir. 2001), this Court concluded that Ohio unambiguously waived Eleventh Amendment immunity against Rehabilitation Act claims when it agreed to accept federal funds pursuant to that Act. *Id.* at 628; *cf. Lane v. Pena*, 518 U.S. 187, 200 (1996) (finding state waiver); *Jim C. v. United States*, 235 F.3d 1079 (8th Cir. 2000) (en banc) (same); *Stanley v. Litscher*, 213 F.3d 340 (7th Cir. 2000) (same); *Clark v. California*, 123 F.3d 1267 (9th Cir. 1997) (same). In light of this Court's decision in *Nihiser*, we find that Carten's Rehabilitation Act claim against KSU and the Doctors in their official capacities is not barred.

**CONCLUSION**

For the reasons stated above, we **REVERSE** the district court as to Plaintiff's ADA Title II claim for money damages against KSU and the individual defendants, as well as his ADA Title II claim for equitable relief against KSU, and **AFFIRM** the district court's decision as to Plaintiff's other claims. This matter is **REMANDED** to the district court for proceedings consistent with this opinion.

themselves offer a powerful reason to provide a federal forum.

*Coeur d'Alene*, 521 U.S. at 279.   Likewise, the Supreme Court justified its holding in *Garrett* in part by noting that federal *Ex parte Young* actions provided other avenues for enforcement of anti-discrimination guarantees, suggesting that the Court believes there to be an ongoing federal interest in allowing federal courts to interpret and vindicate anti-discrimination guarantees, one that outweighs state sovereignty interests in avoiding such suits. *Garrett*, 531 U.S. at 374 n.9.   More generally, the *Coeur d'Alene* Court stated that, "where prospective relief is sought against individual state officers in a federal forum based on a federal right, the Eleventh Amendment, in most cases, is not a bar."  521 U.S. at 276-77.   That situation applies here.

### ADA claims for injunctive relief against KSU

The Eleventh Amendment on its face applies equally to suits in law and equity.   The Supreme Court stated, in *Seminole Tribe v. Florida*, that "the relief sought by a plaintiff suing a State is irrelevant to the question of whether the suit is barred by the Eleventh Amendment ... [and] whether Congress has power to abrogate States' immunity."  517 U.S. 44, 58 (1996).   *See also Rolands v. Point Mouille Shooting Club*, 1999 WL 520110, at *2 (6th Cir. July 14, 1999) (unpublished) (finding that Eleventh Amendment immunity applied equally to claims for monetary and equitable relief brought directly against the state).   Accordingly, for the same reasons that apply to Carten's ADA claim for monetary relief against KSU, we find that the Eleventh Amendment bars Carten's claim for injunctive relief against KSU.

### Rehabilitation Act claim

There are three exceptions to Eleventh Amendment immunity.  First, Congress may abrogate immunity by statute where its action is a proper exercise of constitutional power, as discussed in *Garrett*.  Second, the Amendment does not bar a suit against a state official seeking prospective injunctive

Specifically, Carten alleged that Defendants refused to accommodate his learning disability and dismissed him based on that disability.   Carten sought relief in the form of $1,000,000 in compensatory damages, $1,000,000 in punitive damages, costs and attorney's fees, and reinstatement.

Defendants then moved to dismiss all claims against them. Defendants argued, *inter alia*, that Eleventh Amendment sovereign immunity barred Carten's ADA and Rehabilitation Act claims against KSU and the Doctors in their official capacities, and that Carten's ADA claims against the Doctors in their personal capacities merited dismissal because there is no individual liability under Title II of that Act.  The district court dismissed Carten's claims against the Doctors in their personal capacities, but held that the Eleventh Amendment did not shield KSU or the Doctors in their official capacities from liability under the ADA or the Rehabilitation Act.[1] Defendants then appealed to this Court.

This Court ordered appellate proceedings held in abeyance pending its resolution of *Nihiser v. Ohio EPA*, 269 F.3d 626 (6th Cir. 2001), which put squarely before the Court the issue of whether the Eleventh Amendment bars Rehabilitation Act claims against the states. This Court ultimately held that Ohio has waived Eleventh Amendment immunity against Rehabilitation Act claims.  While *Nihiser* was pending, the Supreme Court decided *Bd. of Trs. v. Garrett*, 531 U.S. 356 (2001), which held that the Eleventh Amendment barred money claims against the states under ADA Title I.  The Court specifically declined to address whether the Eleventh Amendment barred suits against the states under ADA Title II.  Five months before *Garrett*, a three-judge panel of this Court concluded in *Popovich v. Cuyahoga County Court of Common Pleas*, based on reasoning similar to *Garrett*'s, that the Eleventh Amendment bars suits against the states under ADA Title II.  *See* 227 F.3d 627 (6th Cir. 2000)("*Popovich*

---

[1] The district court also dismissed Carten's claims for punitive damages under the ADA and Rehabilitation Act.

*I*"), *reh'g en banc granted, opinion vacated* (6th Cir. 2000). Subsequently, an *en banc* panel of this court vacated *Popovich I*, and issued a new decision in the case on January 10, 2002. *Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808 (6th Cir. 2002) (*"Popovich II"*).

## STANDARD OF REVIEW

The applicability of the Eleventh Amendment to claims against states and state officials under the ADA and the Rehabilitation Act is a question of law which this Court reviews *de novo*. *See Timmer v. Mich. Dep't. of Commerce*, 104 F.3d 833, 836 (6th Cir. 1997).

## DISCUSSION

### ADA Title II claims for money damages against KSU and the Doctors in their official capacities

The parties do not dispute that Carten's claims under Title II of the ADA for money damages against KSU and the Doctors act as claims against the State itself. The Eleventh Amendment provides that:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "Although by its terms the Amendment applies only to suits against a State by citizens of another State, [the Supreme Court's] cases have extended the Amendment's applicability to suits by citizens against their own States." *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001)(citations omitted). However, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivically intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Id*. (citations omitted).

nevertheless may be held responsible in an official capacity for violating Title II, which by its terms applies only to "public entit[ies]." *See Nelson v. Miller*, 170 F.3d 641 (6th Cir. 1999)(permitting a suit against a state official under Title II of the ADA).

Finally, the defendants argue that the Supreme Court's holding in *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997), precludes Carten's use of *Ex parte Young* here. In *Coeur d'Alene*, the Court reasoned that the relief afforded by *Ex parte Young* is most important in cases where (1) no state forum is available to vindicate the federal claim, or (2) the federal interest in interpreting or vindicating federal law outweighs the state's sovereignty interests, and that federal courts may decline to allow the *Ex parte Young* fiction in other cases that implicate special state sovereignty issues (*e.g.*, in adjudicating state land disputes). *Coeur d'Alene*, 521 U.S. at 271-77.

The defendants point out that a state forum exists by which the plaintiff could pursue his federal claims since Ohio has waived sovereign immunity as to suits brought in the State's Court of Claims under O.R.C. § 2743.02(A)(1), and they invite this Court to find that *Ex parte Young* should not apply here. We decline to do so inasmuch as we find that the federal interests in interpreting federal law outweigh the State's sovereignty interests. Defendants do not point to a special state sovereignty interest, such as state property right adjudication, that would justify denying *Ex parte Young* relief here. Moreover, the *Coeur d'Alene* Court explained that the federal government's interest in the availability of *Ex parte Young* relief is particularly strong where such a claim is based on federal laws that enforce Equal Protection guarantees:

If Congress pursuant to its § 5 remedial powers under the Fourteenth Amendment may abrogate sovereign immunity, even if the resulting legislation goes beyond what is constitutionally necessary, it follows that the substantive provisions of the Fourteenth Amendment

does not constitute prospective relief designed to end a continuing violation of federal law.

The defendants also argue that Carten's claims must fail because Title II imposes its requirements only on "public entit[ies]," 42 U.S.C. § 12132, yet Carten wishes to hold responsible the individual doctors, who are not public entities. The defendants attack the natural response to this argument — that the doctors *are* public entities insofar as they represent the state when acting in their official capacity — by invoking *Ex parte Young's* holding that when a state official acts in an unconstitutional manner, "he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." 209 U.S. at 160. Thus, they argue, assuming that the doctors have in fact violated Title II of the ADA, in violating this federal law they have been stripped of their official capacity as representatives of a public entity and have acted only as individuals, and they cannot be liable under the ADA.

The problem with this argument is that it misrepresents *Ex parte Young*, insofar as it fails to recognize the nuances implied in the phrase "he is in that case stripped of his official or representative character." The Court in this phrase was not saying that the official was stripped of his official capacity for all purposes, but only for purposes of the Eleventh Amendment. This is evident in *Ex parte Young* itself: though the official was not "the state" for purposes of the Eleventh Amendment, he nevertheless was held responsible in his official capacity for enforcing a state law that violated the Fourteenth Amendment, which by its terms applies only to "states." *See Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 685 (1982)("There is well-recognized irony in *Ex parte Young*; unconstitutional conduct by a state officer may be 'state action' for purposes of the Fourteenth Amendment yet not attributable to the state for the purposes of the Eleventh."). And in rejecting the defendants' *Ex parte Young* argument, we make a similar distinction: an official who violates Title II of the ADA does not represent "the state" for purposes of the Eleventh Amendment, yet he or she

As the Supreme Court observed in *Garrett*, Congress clearly intended to abrogate states' Eleventh Amendment immunity from the ADA. *Id.* (citing 42 U.S.C. §12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter.")). The Court then went on to consider whether Congress acted within its Constitutional authority, determining that Congress may only subject non-consenting states to liability under the ADA if it does so pursuant to a valid exercise of its power under clause five of the Fourteenth Amendment. *Id.* at 364. Section 1 of the Fourteenth Amendment provides in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. Section 5 of the Fourteenth Amendment provides that "[t]he Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5. The focus of the inquiry is whether the legislation propounded by Congress to enforce the Fourteenth Amendment is "appropriate."

In *Garrett*, the Supreme Court determined that Congress did not validly abrogate states' Eleventh Amendment immunity from suit for money damages under Title I of the ADA. Title I generally prohibits employers, including States, from discriminating in employment practices against qualified individuals with disabilities. 42 U.S.C. §§ 12111-17. The Supreme Court initially determined that Title I of the ADA is a statute enforcing the Equal Protection Clause of the Fourteenth Amendment. *Garrett*, 531 U.S. at 363. The Court concluded that inasmuch as there is not a pattern of discrimination by the states which violates the Fourteenth Amendment, and because the remedy imposed under Title I

of the ADA is not congruent or proportional to the targeted violation, Congress did not have the authority under Section 5 of the Fourteenth Amendment to abrogate states' Eleventh Amendment immunity from suits for money damages under Title I of the ADA. However, the Court specifically declined to address whether Congress validly abrogated states' Eleventh Amendment immunity from suits for money damages under Title II of the ADA. 531 U.S. 356, 360 n.1.

An *en banc* panel of this Court recently addressed the issue of Eleventh Amendment immunity under Title II of the ADA in *Popovich II,* 276 F.3d 808. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In *Popovich II*, the *en banc* panel determined that Title II of the ADA encompasses equal protection claims, as well as due process claims, and held that "the plaintiff's action is barred by the Eleventh Amendment in so far as the action relies on congressional enforcement of the Equal Protection Clause, but it is not barred in so far as it relies on congressional enforcement of the Due Process Clause." *Id*. at 811. The *en banc* panel relied on the Supreme Court's reasoning in *Garrett*, as well as the reasoning of *Popovich I*, in determining that Title II claims sounding in equal protection are an impermissible basis for Congress to abrogate Eleventh Amendment immunity. *Id.*

Here, Carten makes no allegations that sound in due process. Carten complains that he was denied access to public education, not an opportunity to participate meaningfully in judicial proceedings. Nor does he claim that the defendants denied him adequate process in dismissing him. Although he contends that the defendants improperly based their decision to dismiss him on his disability, he acknowledges that he was afforded a hearing on the dismissal on September 15, 1995, and makes no claim that he was entitled to additional procedure beyond that hearing. Accordingly, this Court is left with the *en banc* panel's

conclusion, based on *Garrett*, that the Eleventh Amendment bars equal protection ADA Title II claims against state entities.

### ADA Title II claim for injunctive relief against the Doctors in their official capacity

On its face the Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States." However, in *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court announced an exception to Eleventh Amendment immunity for claims for injunctive relief against individual state officials in their official capacities. In order to qualify under *Ex parte Young*, such an action must seek prospective relief to end a continuing violation of federal law. *See MacDonald v. Vill. of Northport, Mich*. 164 F.3d 964, 970-72 (6th Cir. 1999).

Defendants argue that Carten's claim for reinstatement must fail because it is not prospective and does not assert a continuing violation of law. Specifically, the defendants argue that Carten seeks a retrospective reversal of a completed state decision to expel him. However, this Court previously has held that claims for reinstatement are prospective in nature and appropriate subjects for *Ex parte Young* actions. *See Turker v. Ohio Dep't. of Rehab. and Corrs.*, 157 F.3d 453, 459 (6th Cir. 1998). Moreover, at least one circuit has held specifically that claims for reinstatement state a violation that continues during the period the plaintiff is excluded from the benefits to which he is entitled. *See Elliott v. Hinds*, 786 F.2d 298, 301 (7th Cir. 1986); *see also Dwyer v. Regan*, 777 F.2d 825, 836 (2d Cir. 1985) ("Reinstatement is purely prospective injunctive relief... [A]n order that reinstatement be granted ... is the sort of prospective relief that is not barred by the Eleventh Amendment."). By contrast, the case the defendants rely on, *Mich. Peat v. EPA*, 175 F.3d 422 (6th Cir. 1999), dealt with the plaintiff's attempt to retroactively alter the terms of a permit granted to him by the state, and is inapposite here. Thus, we reject the defendants' argument that reinstatement