CLAY, Circuit Judge,
dissenting.
The majority concludes that this action is untimely pursuant to the Family and Medical Leave Act (“FMLA”), 29 U.S.C. § 2601 el seq., even though it was brought under Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The majority is wrong on two counts. First, Plaintiff has pleaded a willful violation of the FMLA, and therefore his complaint is timely under the applicable three-year statute of limitations, 29 U.S.C. § 2617(c)(2). Second, in the alternative, this Court should hold that Congress’ default four-year statute of limitations, 28 U.S.C. § 1658(a), applies to Ex parte Young claims asserting violations of the FMLA. Because this action as pleaded was timely, I respectfully dissent.
BACKGROUND
Plaintiff Corey Crugher started work for the Michigan Department of Corrections (“MDOC”) in 1994. In 1999, Plaintiff developed a chronic medical condition, identified as generalized anxiety disorder and irritable bowel syndrome, that caused periodic flare-ups, preventing him from performing his usual job responsibilities. Plaintiff first took leave in March 2007 under the FMLA’s self-care provision, 29 U.S.C. § 2612(a)(1)(D). In November 2009, Plaintiff was transferred to Ionia Maximum Correctional Facility (“Ionia”), where Defendant John Prelesnik is warden. Defendant had a history of scrutinizing employees who availed themselves of FMLA leave. In June 2007, while Defendant was the warden of a different MDOC facility, he sent the following e-mail to his staff:
Time and attendance has once again become a problem on the part of some staff. I am directing all supervisors to monitor staffs patterns of sick leave and or annual leave abuse. The State budget is in poor condition and over time is up at [the correctional facility] that is not in our budget. There are no funds to supplement the budget. As such I am directing a close review of abusive patterns.... Personnel will monitor abuse of the family medical act [sic].
(R. 8-1, Pl.’s Mot. to Dismiss Opp’n Ex. A, at 124.)
Plaintiff continued to suffer from his medical condition while at Ionia, and continued to take periodic FMLA leave. But in February 2010, Plaintiff received a memo chiding him for taking too much time off. On April 15, 2010, Constance Partee, Ionia’s human resources manager, placed Plaintiff on “interim rating” for improperly taking FMLA leave. The interim *619 rating warned Plaintiff that his “time and attendance will be closely monitored for unscheduled absences.” (R. 1-5, Compl. Ex. E., at 20.) On September 17, 2010, Plaintiffs supervisor “commend[ed]” Plaintiff for his compliance with the interim rating. (R. 1-6, Compl. Ex. F, at 23.) But in approximately October 2010, Plaintiff was apparently placed back on interim rating for a period of 180 days. This interim rating was written by “Sgt. B. Wenzel,” and is unsigned and undated. Sgt. Wenzel accused Plaintiff of repeatedly violating time and attendance requirements by taking leave on several occasions from August to October 2010. Plaintiff alleges that he was not presented with this document until after his termination and asserts that he was never placed on a second interim rating.
On November 22, 2010, Plaintiff was approved for intermittent FMLA leave for a six-month period. Plaintiff supported his application for leave with a Certification of Employee’s Serious Health Condition completed by Dr. David Mohlman. Dr. Mohlman certified that he had treated Plaintiff on multiple occasions for his medical condition; that Plaintiff would probably be afflicted for the rest of his life; and that Plaintiffs symptoms included “severe abdominal pain, diarrhea, bleeding, cramping, [and] fatigue.” (R. 1-8, Compl. Ex. H, at 29.) Despite this certification, on November 23, 2010, Partee placed Plaintiff on another interim rating for noncompliance with MDOC leave policies. Plaintiff alleges that he also was not presented with this interim rating.
On December 31, 2010, Plaintiff received his annual rating — “Meets Expectations.” (R. 1-11, Compl. Ex. K, at 36.) Among other things, Plaintiff was given this satisfactory rating for his integrity and honesty, defined as “displaying high standards of ethical conduct and understanding the impact of violating these standards on the organization, staff, and others; being trustworthy.” (Id. at 39.) Nevertheless, on January 11, 2011, Plaintiff was terminated from his position at MDOC, ostensibly as a final resolution of his second interim rating. Plaintiffs union filed a grievance, but that process ended with the conclusion that Plaintiff was fired for failing to improve his behavior during his second interim rating.
On April 16, 2013, two years and three months after he was fired, Plaintiff filed a one-count complaint in the Western District of Michigan seeking reinstatement for violations of the FMLA pursuant to Ex parte Young. Defendant moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6), and the district court granted the motion. Crugher v. Prelesnik, No. 13-CV-416, 2013 WL 5592969 (W.D.Mich. Oct. 10, 2013). The district court held that Defendant was not the proper target for an Ex parte Young suit since Defendant was not personally “involved in the violation of [Plaintiffs] rights under the FMLA.”[1] Id. at *3. The district court further held that Plaintiffs suit was barred *620 by the FMLA’s statute of limitations. See id. at *3-4. This appeal timely followed.
DISCUSSION
The FMLA’s self-care provision allows an eligible employee to take up to twelve weeks of leave “[bjecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.” 29 U.S.C. § 2612(a)(1)(D). States are immune from suit for violations of the self-care provision. See Coleman v. Court of Appeals of Md., — U.S. -, 132 S.Ct. 1327, 1332, 182 L.Ed.2d 296 (2012). But plaintiffs can bring suit for these violations against individual state officers for prospective relief-including reinstatement — under Ex parte Young. See Diaz v. Mich. Dep’t of Corr., 703 F.3d 956, 966 (6th Cir.2013). The statute of limitations for FMLA actions is two years; three years if the violation is willful. See 29 U.S.C. § 2617(c). The majority concludes that the FMLA’s statute of limitations applies to Plaintiffs Ex parte Young claim. Even if this were. correct, the FMLA’s limitations scheme still mandates reversal since Plaintiff has pleaded a willful violation of the statute.
“An employer commits a willful violation of the FMLA when it acts with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA’s requirements; therefore, the determination of willfulness involves a factual question.” Ricco v. Potter, 377 F.3d 599, 602 (6th Cir.2004). Plaintiff alleges that he received permission to take FMLA leave, received positive performance reviews, and was commended for adhering to the interim rating he received for leave— related irregularities. Nevertheless, Plaintiff was terminated — apparently for failing to improve his behavior after receiving a second interim rating. But Plaintiff alleges that he never received this interim rating, or the follow-up communication from Partee. The documentary evidence supports Plaintiffs allegation. The second interim rating was not signed by the officer who supposedly authored it, nor was it signed by Plaintiff to indicate receipt. The Partee memo was issued just one day after Plaintiff was formally approved for FMLA leave. These allegations and the supporting documentary evidence “allow[ ] [us] to draw the reasonable inference” that Plaintiffs employer was assembling a bogus dossier with the intent to fire him. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In other words, Plaintiff has plausibly alleged that Defendant was aware of his obligations under the FMLA, but tried to “affirmatively evade[ ] them.” Hoffman v. Prof'l Med Team, 394 F.3d 414, 419 (6th Cir.2005). Because Plaintiff has pleaded a willful violation of the statute and has brought his claim within three years of his termination, I would reverse the district court and remand for further proceedings.
But even if the majority were correct and the alleged violation was not willful, we should still reverse on the basis that this is an Ex parte Young cause of action, not an FMLA cause of action. The Eleventh Amendment bars private suits against a state “regardless of the nature of the relief sought,” Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), but subject to exceptions. A state may consent to suit, or Congress may abrogate state sovereign immunity pursuant to § 5 of the Fourteenth Amendment. See Coleman, 132 S.Ct. at 1333. In addition, under Ex parte Young, a plaintiff can bring a suit against a state official for prospective relief to end an “ongoing violation of federal law.” Verizon Md. Inc. v. Pub. Serv. Comm’n of Md., 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (quotation marks omit *621 ted). Ex parte Young does not simply provide a jurisdictional exception with regard to the Eleventh Amendment — it recognizes that a “cause of action” to ensure compliance with a federal statute “is implied under the Supremacy Clause.” Chase Bank USA, N.A. v. City of Cleveland, 695 F.3d 548, 554 (6th Cir.2012).[2]
Even though the Ex parte Young cause of action springs from a constitutional source, Congress can regulate its contours with respect to particular statutory rights. On one extreme, “where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right,” this fact militates against recognizing an Ex parte Young cause of action to enforce the same statute. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 74, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). We held in Diaz that the FMLA’s remedial scheme was not robust enough to crowd out an Ex parte Young remedy. See Diaz, 703 F.3d at 966. But we did not affirmatively address whether Congress intended to regulate procedures for Ex parte Young actions to enforce FMLA rights. Seminole Tribe suggests that to answer this question, we should consider whether the regulatory scheme refers only to duties and remedies applied to states as entities, or whether the scheme “is broad enough to encompass both a suit against a State (under [a Fourteenth Amendment] abrogation theory) and a suit against a state official (under an Ex parte Young theory).” Seminole Tribe, 517 U.S. at 75 n. 17, 116 S.Ct. 1114. Thus a statute that authorizes suit against a state official, a state’s governor, or even “ ‘any person,’ ” would mean that Congress intended to allow an Ex parte Young suit and regulate the procedures for bringing it. Id. (quoting 33 U.S.C. § 1365(a)).
Looking at the FMLA through the Seminole Tribe lens, we see that the statute imposes duties that tend to be the “sort likely to be performed by an individual state executive officer.” Id. But any notion that the FMLA itself authorizes suits against individual state officials begins and ends with our decision in Mitchell v. Chapman, 343 F.3d 811 (6th Cir.2003). In Mitchell, we performed a detailed textual analysis of the FMLA’s definition of “employer,” which includes “a public agency,” as well as “any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.” 29 U.S.C. § 2611(4). Since the statute also allows for suits seeking “damages or equitable relief ... against any employer (including a public agency),” 29 U.S.C. § 2617(a)(2), a casual reader might conclude that the FMLA authorizes suits against the agents of public agencies. Wrong. The FMLA’s definition of employer excludes these public officers. See Mitchell, 343 F.3d at 832. The majority brushes off Mitchell’s textual analysis, and claims that even though individual state officials cannot be sued for damages, the FMLA allows equitable suits against them in their representative capacities. Wrong again. A suit against a state officer in his *622 official capacity is nothing more than a suit against the agency itself. See Will v. Mich. Dep’t of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Since the Eleventh Amendment bars suits against a state to enforce the FMLA’s self-care provision, it equally bars suits against a state’s alter ego — and remember, the Eleventh Amendment bars equitable suits just as it bars suits for damages. See Pennhurst, 465 U.S. at 100, 104 S.Ct. 900. It is only through Ex parte Young that an officer acquires a quantum state — at once “stripped of his official or representative character,” Ex parte Young, 209 U.S. at 160, 28 S.Ct. 441, and “responsible in his official capacity for enforcing a state law.” Carten v. Kent State Univ., 282 F.3d 391, 396 (6th Cir.2002). This necessary legal fiction is nowhere to be found in the FMLA.
Even though interpreting the FMLA with reference to Ex parte Young is not without difficulty, we should be guided above all by the statute’s text. The FMLA does not allow suits against state officials in their individual capacities, and does not discuss suits against them in their representative capacities. We should therefore hold that the procedures of the FMLA do not apply to Ex parte Young actions that seek to enforce the statute’s substantive provisions. As a result, the FMLA’s limitations scheme would not apply to Plaintiffs Ex parte Young cause of action.
If the FMLA’s statute of limitations would not apply to Plaintiffs claim of its own force, we must look to some other source for the rule. Traditionally, we would borrow the analogous statute of limitations from state law, see Wilson v. Garcia, 471 U.S. 261, 275, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), or perhaps from federal law, if the state limitations period would “frustrate or interfere with the implementation of national policies, or be at odds with the purpose or operation of federal substantive law.” N. Star Steel Co. v. Thomas, 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995) (quotation marks and citations omitted). But Congress has done away with the need to search for analogous laws by enacting a default four-year statute of limitations that applies to all claims “arising under an Act of Congress enacted after” December 1, 1990. 28 U.S.C. § 1658(a). Even though Ex parte Young provides the remedial vehicle, Plaintiffs claim still arises under the FMLA, insofar as his hoped-for “relief necessarily depends on resolution of a substantial question of federal law.” Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 690, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006) (quotation marks omitted) (construing 28 U.S.C. § 1331); see also Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004) (holding that § 1658(a) applies if the plaintiffs claim “was made possible by a post-1990 enactment”). The FMLA was enacted after December 1, 1990, and Plaintiffs Ex parte Young claim arises under that statute. Plaintiffs claim is thus timely under the four-year statute of limitations of § 1658(a).
CONCLUSION
Plaintiff has pleaded a willful violation of the FMLA and therefore his complaint is timely. In the alternative, this claim is timely under Congress’ default four-year statute of limitations. I therefore respectfully dissent.

. The majority does not address this prong of the district court’s ruling, which is undoubtedly incorrect. Plaintiff's Ex parte Young claim seeks reinstatement to remedy a "continuing violation of federal law.” Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) (emphasis added). Determining whether Plaintiff is entitled to reinstatement requires an examination of historical events, but the relief sought is entirely prospective. See Diaz v. Mich. Dep't of Corr., 703 F.3d 956, 965 (6th Cir.2013); Carten v. Kent State Univ., 282 F.3d 391, 396 (6th Cir.2002). I would therefore hold that the proper defendant in an Ex parte Young action for reinstatement is not the official personally involved in a plaintiff's termination, but the official that has the authority under state law to reinstate the plaintiff.

. We are not alone in this holding. See New Orleans & Gulf Coast Ry. v. Barrois, 533 F.3d 321, 330 (5th Cir.2008); Joseph A. ex rel. Wolfe v. Ingram, 275 F.3d 1253, 1265 (10th Cir.2002); Burgio & Campofelice, Inc. v. N.Y. State Dep’t of Labor, 107 F.3d 1000, 1006 (2d Cir.1997); Guar. Nat’l Ins. Co. v. Gates, 916 F.2d 508, 512 (9th Cir.1990). The majority’s jurisdiction-only interpretation of Ex parte Young closely tracks Justice Souter’s opinion in Seminole Tribe of Florida v. Florida, 517 U.S. 44, 177-78, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (Souter, J., dissenting). One small point — Justice Souter lost. And as explained below — and contrary to the contention in footnote 8 of the majority opinion — the FMLA does not expressly provide a cause of action for equitable relief to enforce the statute’s self-care provision.