ROBERT J. JONKER, CHIEF UNITED STATES DISTRICT JUDGE
While he was a student at Northern Michigan University, Plaintiff Nelson was arrested for illegal drug activity. Criminal proceedings ensued. The school suspended him and held a disciplinary hearing, after which it expelled him. During the hearing, Plaintiff refused to answer questions, because *967 his criminal case was pending and he did not want to incriminate himself. He now alleges violation of his right to procedural due process and retaliation for exercising protected rights. Defendants move to dismiss.
Background
Plaintiff Kyle Nelson enrolled as a student at Northern Michigan University ("NMU") in the fall of 2014. (Am. Compl., ECF No. 11, PageID.64.) He majored in construction management; lived on campus; and had a GPA of approximately 3.55. (Id. ) On November 2, 2015, an NMU "tip line" received an e-mail alleging that Mr. Nelson was involved in drug activity. (Id. , PageID.65.) Defendant Guy LaPlante, a detective/lieutenant with the university's Department of Public Safety and Police Services, interviewed a witness ("John Doe") "who made certain allegations against Kyle." (Id. ) Based on John Doe's allegations, Det. LaPlante swore out and received a search warrant. (Id. , PageID. 65-66.) Det. LaPlante executed the warrant and found "an assortment of over the counter and prescription pills and a small amount (less than an ounce) of alleged marijuana and marijuana 'wax.' " (Id. , PageID.66.) Det. LaPlante read Mr. Nelson his Miranda rights. (Id. ) Mr. Nelson chose not to make any statements. (Id. ) The Marquette County prosecutor charged Mr. Nelson with a single count of delivery of marijuana under MICH. COMP. L. 333.740, a felony offense. (Id. ) The offense carries a sentence of up to four years imprisonment and up to $ 20,000 in fines. (Id. )
On December 18, 2015, NMU through its internal disciplinary process charged Mr. Nelson with eighteen violations of the NMU student code. (Id. ) A Conduct Board Hearing to address the charges against Mr. Nelson took place on April 15, 2016. (Id. ) Mr. Nelson and his then-attorney, Trent Stupak, attended the hearing. (Id. ) The NMU Code states that attorneys may attend conduct proceedings only if there are concurrent criminal charges, as in Mr. Nelson's case. (Id. ) Det. LaPlante was a witness at the hearing.
The NMU Student Handbook provides:
Disciplinary proceedings involved with conduct that potentially violates both the criminal law and the Student Code will proceed without regard to pending civil or criminal litigation in court or criminal arrest and prosecution. Proceedings under this Student Code may be carried out prior to, simultaneously with, or following civil or criminal proceedings off campus at the discretion of the Dean of Students or designee.
(Id. ) The Student Handbook permits a Dean of Students to postpone a hearing "due to extenuating circumstances." (Id. ) Mr. Nelson requested several times to postpone the hearing until after his criminal case concluded. (Id. , PageID.68.) He did not want to make any statements in the Conduct Board hearing that a prosecutor could use against him in his criminal case. (Id. ) Mr. Nelson also requested production of the witnesses against him and an opportunity to cross-examine them at the hearing. (Id. ) Dean Blair denied the requests. (Id. )
None of the witnesses who had made allegations against him in the police investigation appeared at the hearing. (Id. ) Mr. Nelson stated, "I object to this hearing moving forward in the absence of the complaining witness. I do not have the right to cross examine [the witnesses] ...Everyone lied about the truth." (Id. ) Mr. Nelson stood mute to the charges alleged against him. (Id. ) He explained that a challenge to the search was pending in his criminal case. When asked why he wanted to postpone the hearing, he stated, "[b]ecause I have to stand mute on many charges because of the pending court things and *968 what's going on and I'll have a better case to prove myself once it gets cleared up and I can talk more on the charges." (Id. , PageID.69.) Dean Blair asked Mr. Nelson to provide a closing statement, and he did so. (Id. ) In his closing statement, Mr. Nelson stated, among other things, that "[t]he 4th Amendment right not to have an illegal search and seizure and also my 6th Amendment right to a counsel were violated. I should have the opportunity to discuss this with you. I would like to be able to clarify these charges at a later date so I hope you consider that and give me an extension for another hearing." (Id. )
After the hearing ended, the board made its decisions. The same day, Dean Blair notified Mr. Nelson by e-mail of the results. (Id. , PageID.72.) The board ruled in Mr. Nelson's favor on all charges that potentially hinged on witness credibility. But the board ruled against Mr. Nelson on the violations supported by physical evidence seized from his apartment and vehicle, or by photographs taken from his cell phone. These violations involved possession of 7.7 grams of marijuana found in his vehicle on November 2, 2015; 8.7 grams of marijuana wax found in his residence hall room during the execution of the search warrant; and $ 833.00 in cash and a box of plastic baggies. (ECF No. 17-4, PageID.245.) They also involved violations involving a firearm stored with or near the drugs. (Id. , PageID.246-47.) Dean Blair summarized that the board found Mr. Nelson responsible for the violations "substantiated by information from the search warrant, including physical and digital evidence." (Id. , PageID.247.)
Dean Blair informed Mr. Nelson that the board voted unanimously to expel him. (Id. ) She explained that in reaching its decision, the board "stated that there was substantial information concerning dealing drugs, consuming drugs and illegal firearm use which violated multiple federal laws[;]" and "stated that the educational mission of Northern Michigan University was compromised by your actions." (Id. ) Dean Blair also noted that the conduct board "also stated that the illegal actions you were held responsible for were a danger to the NMU and Marquette communities and have had an extensive impact on members of the NMU community." (Id. ) Dean Blair outlined the appeal process: "[i]f you wish to appeal based on questions of fact or procedure, or for leniency of the sanction, follow the guidelines provided in 2.6 of the Student Code. The Student Code can be found on the Dean of Students Office website. The deadline for your appeal to be submitted is 5:00 p.m. on Tuesday, April 19, 2016." (Id. ) She attached the leniency appeal guidelines to the e-mail she sent and told Mr. Nelson to call her with any questions regarding an appeal. (Id. )
Mr. Nelson appealed. (ECF No. 11, PageID.73.) He stated, "I was unable to answer questions or explain myself during the conduct meeting because I had criminal charges pending in Marquette County." (Id. ) He reiterated his preference that the hearing take place after his criminal proceedings concluded. (Id. ) He requested "leniency on my sanctions and an opportunity to explain myself and answer any and all questions at a new conduct hearing." (Id. ) The Appeals Committee affirmed the expulsion on April 28, 2016. (Id. , PageID.74.) The letter affirming the expulsion noted, "[Y]ou also had the opportunity to speak and voluntarily chose not to utilize that right during the majority of the hearing." (Id. )
On January 31, 2017, the prosecution dismissed all the criminal charges against Mr. Nelson. (Id. ) Mr. Nelson filed this suit challenging his expulsion on February 1, 2018. (ECF No. 1.) He asserts both a Procedural Due Process and a Retaliation *969 claim. Defendants move to dismiss. (ECF No. 16.)
Legal Standards and Discussion
1. Eleventh Amendment
The Eleventh Amendment on its face bars "any suit in law or equity, commenced or prosecuted against one of the United States." In Ex parte Young , 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court established an exception for claims for injunctive relief against individual state officials in their official capacities. To qualify under Ex parte Young , "such an action must seek prospective relief to end a continuing violation of federal law." Carten v. Kent State University , 282 F.3d 391, 395 (6th Cir. 2002). The Sixth Circuit has held that "claims for reinstatement are prospective in nature and appropriate subjects for Ex parte Young actions." Id. "Moreover, at least one circuit has held specifically that claims for reinstatement state a violation that continues during the period the plaintiff is excluded from the benefits to which he is entitled." Id. at 396. In Carten , the Sixth Circuit applied Ex parte Young to allow an ADA plaintiff to pursue reversal of a completed state decision to expel him. Id. at 395. As currently postured, the only named defendant is NMU itself, and the 11th Amendment definitely applies, as even Plaintiff acknowledges. However, Plaintiff could and would, if permitted, substitute an appropriate official who could be compelled in his or her official capacity to grant any prospective relief required by constitutional law. Accordingly, the Court will turn to the merits and evaluate under Rule 12(b)(6) whether Plaintiff has stated any claim that can proceed against these defendants, or a prospective substitute.
2. Due Process
The seminal Sixth Circuit case delineating due process rights in the school disciplinary context is Flaim v. Medical College of Ohio , 418 F.3d 629 (6th Cir. 2005). Plaintiff Flaim was a third-year medical student at the Medical College of Ohio. Flaim , 418 F.3d at 631. Police officers arrested him for possession of drugs including Ecstasy, cocaine, and LSD. Id. at 632. During the arrest, police officers also confiscated a handgun and over $ 9,000 in cash. Id. A grand jury indicted Mr. Flaim on four counts of felony drug possession. Id. He ultimately pleaded guilty to a lesser-included offense of Attempted Possession of Drugs, a felony. Id. He received a sentence of two years of unsupervised probation. Id.
Shortly after his arrest, the medical college suspended Mr. Flaim. Id. The college notified him that he had a right to an internal investigation and that it would not allow him to return to campus until he participated in an internal hearing. Id. In an effort to avoid incriminating himself, Mr. Flaim chose not to schedule an internal investigation until after the resolution of the criminal charges. Id. After pleading guilty to the single felony drug offense, Mr. Flaim requested an internal hearing. Id. A hearing took place before the Student Conduct and Ethics Committee. Id. at 632-33. At the hearing, the arresting officer testified, and Committee members questioned the officer and Mr. Flaim extensively. Id. at 633. Mr. Flaim's attorney was not allowed to ask questions or speak with Mr. Flaim, and Mr. Flaim was not permitted to cross-examine the officer. Id. A few days later, the dean notified Mr. Flaim of his expulsion from the Medical College. Id. The dean told Mr. Flaim that no appeal was available. Id.
Mr. Flaim sued the Medical College, claiming that the Medical College violated his rights to procedural and substantive due process. Id. The district *970 court granted a defense motion to dismiss, and the Sixth Circuit affirmed. Id. The Sixth Circuit detailed the governing legal standards. "[W]e have held that the Due Process Clause is implicated by higher education disciplinary decisions." Id. (collecting cases). "The amount of process due will vary according to the facts of each case and is evaluated largely within the framework laid out by the Supreme Court in Mathews v. Eldridge , 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)." Id. at 634. A disciplinary expulsion calls for a "more searching inquiry" than an academic one. Id.
"Many times over the Supreme Court has made clear that there are two basic due process requirements: (1) notice, and (2) an opportunity to be heard." Id. "The type of notice and hearing will vary and be judged for sufficiency based on the context in which the dispute arose." Id. For example, in Goss v. Lopez , 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), which involved a ten-day suspension of a high school student, the Court found due process satisfied where a student received oral notice, an explanation of the evidence that supported the accusation, and an opportunity to present an alternative version of the facts. Id. The principal concern "was ensuring the presence of fundamentally fair procedures to determine whether the misconduct had occurred." Id. (internal quotation marks omitted).
Under the Mathews framework, courts examine three factors: "(1) the nature of the private interest affected - that is, the seriousness of the charge and potential sanctions, (2) the danger of error and the benefit of additional or alternate procedures, and (3) the public or governmental burden were additional procedures mandated." Id. A sliding scale applies. Id. "Longer suspensions or expulsions ... may require more formal procedures." Goss , 419 U.S. at 584, 95 S.Ct. 729. "The hearing, whether formal or informal, live or not, must be meaningful and must provide the accused with the opportunity to respond, explain, and defend." Flaim , 418 F.3d at 635 (internal quotation omitted). The Due Process clause "sets only the floor or lowest level of procedures available .... [T]he requirements mandated by the Due Process Clause afford, 'if anything, less than a fair minded school [administrator] would impose upon himself in order to avoid unfair [decisions]." Id. (quoting Goss , 419 U.S. at 583, 95 S.Ct. 729 ). "Notice satisfies due process if the student had sufficient notice of the charges against him and a meaningful opportunity to prepare for the hearing." Id. at 638 (internal quotation omitted).
In Flaim , the court found that the written notice provided to Mr. Flaim satisfied due process. Id. at 638-39.[1] The college's refusal to allow Mr. Flaim to consult with his attorney during the hearing, and refusal to allow the attorney to participate in the proceedings, did not violate due process. Id. at 640. "Assuming without deciding that there is a right to counsel in some academic disciplinary proceedings, we think that the procedures utilized here were sufficient." Id. Due process did not require that Mr. Flaim be permitted to cross-examine the arresting officer, particularly because Mr. Flaim's case did not hinge on a credibility determination. Id. at 641. "We assume that any discrepancies ...
*971 would not have been sufficient to convince the Committee that Flaim had not been convicted of a felony." Id. The court also rejected Mr. Flaim's claim that the absence of written findings or a right to appeal violated due process. Id. at 641-42. The court emphasized that the case did not involve "factual disputes where many of the additional procedures would be helpful in determining 'whether the misconduct [such as cheating] has occurred.' " Id. (quoting Goss , 419 U.S. at 574, 95 S.Ct. 729 ). The college "based its decision essentially on a certified record of a recent felony conviction. This, we conclude, makes Flaim's case quite different from the ordinary disciplinary case, and rendered many of the ordinarily required procedures constitutionally unnecessary." Id. at 643. "We strongly emphasize that a disciplinary hearing involving a record of conviction is wholly different from a case involving disputes of fact, even if the university believes the evidence to be overwhelming." Id. , n. 7.
University of Cincinnati , a more recent case involving sexual assault, likewise emphasizes that the "Due Process Clause guarantees fundamental fairness to state university students facing long-term exclusion from the educational process." Doe v. University of Cincinnati , 872 F.3d 393, 396 (2017). University of Cincinnati articulates the same legal standards detailed in Flaim . Id. at 399-400. "At a minimum, a student facing suspension is entitled to the opportunity to be heard at a meaningful time and in a meaningful manner." Id. "While the exact outlines of the process may vary, universities must 'at least' provide notice of the charges, an explanation of the evidence against the student, and an opportunity to present his side of the story before an unbiased decision maker." Id. at 399-400. In University of Cincinnati , the court found that the plaintiff demonstrated a strong likelihood of success on a due process claim based on disciplinary action after a hearing at which his accuser - the only other person present at the time of the alleged sexual assault - did not appear. The court emphasized that credibility determinations were essential to the committee's finding of misconduct and disciplinary action. Id. at 406-07.
In Mr. Nelson's case, the Mathews factors as amplified in Flaim and Doe weigh in favor of the defendants' position. Due process rights in the criminal and school setting necessarily and properly differ. The process here was by no means perfect, even under NMU's own rules, but it was still constitutionally adequate. Expulsion is a significant academic punishment, but the penalty is within the power of the disciplinary board once it finds violations. There is nothing pleaded or of record that suggests that expulsion was inappropriate for someone found to be in violation of school rules against possessing and distributing drugs, and possessing firearms along with the drugs.[2] Mr. Nelson had the ability to make out that kind of argument without in any way exposing himself to a risk of self-incrimination. Presenting an argument for leniency in case the board ruled against him would depend simply on factors such as Mr. Nelson's academic success and promise and potential comparisons to other cases involving university-imposed punishment for students found responsible for similar misconduct. Mr. Nelson chose not to make such an argument to the board or on appeal, thus electing against a defense pathway that had the potential to mitigate the severity of the sanction without any risk *972 of self-incrimination. That was Mr. Nelson's choice, not NMU's.
The second Mathews factor - the risk of an erroneous deprivation through the procedures used, and the probable value of additional procedural safeguards - also weighs in favor of the defense here. Flaim and Doe make it clear that a full adversary hearing is not necessary when credibility is not the hinge issue. To the contrary, a university has very different concerns and needs than does the criminal law enforcement system. Here, Mr. Nelson received clear and specific notice of the charges brought against him. He also received an opportunity to be heard. The hearing involved a direct opportunity to address the decisionmaker personally. He had the opportunity to present his position. And he had the privilege of counsel to accompany him. He made it clear that he believed witnesses were lying about his involvement in drug activity, and that he wanted the opportunity to present his own story more fully after the criminal proceedings. That might have been needed if the board ruled against Mr. Nelson on the charges that hinged on the credibility of witnesses. But it did not do that. In fact, it ruled in favor of Mr. Nelson on all such violations. The violations found against Mr. Nelson were based on physical evidence and pictures on his phone. Mr. Nelson also had the opportunity to appeal. He received all the process, and more, that the Sixth Circuit approved as sufficient in Flaim for a case that does not hinge on credibility.
The third Mathews factor - the government's interest, including the function involved and the administrative burdens of more procedures - supports the defense position here too. "Education is a university's first priority; adjudication of student disputes is, at best, a distant second." University of Cincinnati , 872 F.3d at 400. "Formalizing hearing requirements would divert both resources and attention from the educational process." Jaksa v. Regents of the Univ. of Mich. , 597 F.Supp. 1245, 1248 (E.D. Mich. 1984), aff'd 787 F.2d 590 (6th Cir. 1986) (per curiam, unpublished). Mr. Nelson notes that NMU did not flawlessly follow its own procedures. But that is not fatal for NMU. Id. , at 1251. The University afforded more than fundamental due process for Mr. Nelson in pursuit of the University's own obvious interest in keeping its campus and its students free from drugs, and the risk of firearms used in support of drug distribution.
The criminal charges against Mr. Nelson were ultimately dismissed, whether because critical evidence was suppressed on a defense motion, or otherwise. The record does not clearly reveal the reasons. Ultimately, the reason the criminal charges were dismissed is beside the point because the fundamental point of Flaim is that public universities and federal law enforcement run on different tracks and vindicate different public interests. As long as public universities honor the fundamentals of due process, they need not conform to all the procedural safeguards built into the criminal process. As a result, it is not surprising that the two systems sometimes come to different ultimate outcomes. The role of procedural due process is limited to evaluating the process; it does not guarantee any particular outcome.
3. Retaliation
"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in *973 part by the plaintiff's protected conduct." Thaddeus-X v. Blatter , 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff theorizes that the board punished him for invoking his constitutional rights. Plaintiff engaged in protected conduct by electing to remain silent to avoid self-incrimination. An adverse action then occurred - NMU expelled him. The causal hook, says Plaintiff, could plausibly be drawn based on the recorded comments of some members of the board warning him that if he didn't tell his story the board would have little choice. According to Plaintiff, this states a retaliation theory.
The Court disagrees. The first and most fundamental problem with the theory is that the actual decision of the board belies any theory of retaliation. The board ruled in Mr. Nelson's favor on the violations that hinged on witness credibility. If the board wanted to retaliate against Mr. Nelson for exercising his right not to make self-incriminating statements, the board would have found against him. Here, the claims found against Mr. Nelson were all based on physical evidence from his residence, his vehicle, or his cell phone. Some board members warned Mr. Nelson that if he chose to offer no explanation for the physical evidence, there would be little basis for the board to rule in his favor. But this was simply a statement of factual and legal reality: if all the evidence of record points against a party, and the party chooses to present nothing, the only lawful decision consistent with the evidence is against the party. And that is what happened here.
To equate such a result with a plausible theory of retaliation would put an impossible burden on the process of adjudication - whether at the criminal or the university level. In every adjudicative process, a subject can exercise the constitutional right to speak, or not to speak.[3] If every subject who loses could state a plausible retaliation theory based simply on the inevitable exercise of some protected right (whether to speak or not to speak), the result of every adjudicative decision would theoretically be subject to federal judicial review for retaliatory motive. Fortunately, nothing in the existing case law supports such a theory. To the contrary, at least in the civil context, the law affirmatively permits an adverse inference based on the exercise of Fifth Amendment rights. Baxter v. Palmigiano , 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (noting "the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them...."). The parties have not cited, nor has the Court found, a single case in which a retaliation theory has been presented, successfully or unsuccessfully, against a school disciplinary tribunal on this kind of theory.
There is one potential retaliation theory, not currently pleaded with any specificity, that could potentially survive Rule 12(b)(6): namely, a retaliation claim against Detective LaPlante. Plaintiff suggests the possibility of a retaliation theory arising out of Detective LaPlante's role in swearing out a search warrant affidavit and pursuing criminal charges. Plaintiff implies that Defendant LaPlante's investigation foundered when Plaintiff invoked his Fifth Amendment rights in the context of the criminal investigation, and that Detective LaPlante became involved in the school disciplinary proceeding to circumvent the perceived obstacle, to pressure Mr. Nelson and to effectively punish him for his exercise *974 of the right. Perhaps. But Plaintiff's current pleadings do not state any such claim. The Court will, however, give Plaintiff an opportunity to file an amended retaliation claim against Detective LaPlante, if he can do so in good faith.
CONCLUSION
For these reasons, Defendants' motion to dismiss under FED. R. CIV. P. 12(b)(6) (ECF No. 16 ) is GRANTED . Plaintiff may file an amended complaint that attempts to articulate a retaliation theory against Detective LaPlante in his individual capacity. Any such amended pleading is due not later than August 31, 2018. Judgment will not enter before the August 31, 2018 deadline.

The notice "identified the precise College policies that he was charged with violating[;]...informed Flaim that he was suspended until external investigations/hearings were completed, and informed him that he had a right to an internal investigation in addition to the external investigation." Id. at 638. The college also notified him that he was required to attend an internal hearing before returning to campus. Id. at 638-39.

The Court notes that federal law expressly prohibits possession of firearms in furtherance of drug trafficking crimes under 18 U.S.C. § 924(c).

Even apart from the Fifth Amendment, the First Amendment may protect a right to silence as part and parcel of the overall right of free expression.